**In re ROSALIND GARDENS ASSO-CIATES, A New York Limited Partnership, Debtor.**

**Jeffrey L. SAPIR, as Chapter 7 Trustee of the Estate of Rosalind Gardens Associates, Plaintiff,**

v.

**HUDSON REALTY COMPANY, Bernice Kahn, Herbert Ratet, Lehrman, Kronick & Lehrman, and Jeffrey S. Rodner, Defendants.**

Bankruptcy No. 88 B 20438 (HS). No. 93 ADV. 5155A.

United States Bankruptcy Court, S.D. New York.

Aug. 2, 1993.

Baer Marks & Upham, New York City, for plaintiff Jeffrey L. Sapir.

Conway, Farrell, Curtin & Kelly, P.C., New York City, for defendant Jeffrey S. Rodner.

D'Amato & Lynch, New York City, for defendant Lehrman, Kronick & Lehrman.

Robert Foster Greenstone, White Plains, NY, for defendants Hudson Realty Co., Bernice Kahn and Herbert Ratet.

## DECISION ON MOTION AND CROSS-MOTIONS FOR SUMMARY JUDGMENT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

In the present adversary proceeding commenced by the Chapter 7 trustee for turnover and for violation of the automatic stay, the defendant Hudson Realty Company ("Hudson"), the mortgagee of the debtor's sole asset, has moved for summary judgment to dismiss the Amended Complaint pursuant to Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56. The central issue in this case is whether Hudson violated the automatic stay by executing on a foreclosure judgment against the proceeds from a tax certiorari action, which were being held in escrow by the debtor's tax attorney. Hudson argues that it did not violate the automatic stay when it executed its foreclosure judgment against the tax refund proceeds held in escrow by the debtor's tax attorney because it obtained relief from the automatic stay and the mortgage upon which it foreclosed granted it the right to the tax refund as additional security.

## FACTUAL BACKGROUND

On August 5, 1988, the debtor, Rosalind Gardens Associates, a New York Limited Partnership, filed with this court its voluntary petition for reorganizational relief under Chapter 11 of the Bankruptcy Code. The debtor continued in possession and management of its property as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

On October 16, 1989, the case was converted for liquidation under Chapter 7 of the Bankruptcy Code and a Chapter 7 trustee was appointed and qualified to act as such.

On December 19, 1983, Hudson sold a parcel of land including the premises located at 269 South Broadway, Dobbs Ferry, New York (the "Property") to the debtor and took back from the debtor a purchase money wrap-around mortgage (the "Mortgage") in the amount of $1,150,000.00. At the time, Fourth Federal Savings and Loan Association ("Fourth Federal") held a first mortgage on the Property which was not satisfied at the closing and therefore remained against the Property. Pursuant to the Mortgage, the debtor was required to pay monthly installments towards the yearly tax assessments, such payments to ultimately be deposited in Fourth Federal's tax escrow account, and in turn disbursed according to the rules of the local taxing authorities. While the debtor was required to make these tax payments, Hudson remained liable to Fourth Federal. In 1986, the debtor defaulted on the tax payments and Hudson began making the tax payments to Fourth Federal's tax escrow account so as not to default itself.

In 1987, approximately one year before the commencement of the Chapter 11 case, Hudson initiated a foreclosure action in the New York Supreme Court, Westchester County against the debtor and its managing general partner, DBG Property Investors, Inc. ("DBG"), based on the debtor's default of the Mortgage. The defendants Herbert Ratet ("Ratet") and Bernice Kahn ("Kahn") were each general partners of Hudson. The law firm of Lehrman, Kronick & Lehrman ("Lehrman"), a defendant in this adversary proceeding, represented Hudson, also a defendant here, in the foreclosure action.

Hudson was a partnership organized and existing under the laws of the State of New York. Lehrman is a partnership organized under the laws of the State of New York and its partners are attorneys practicing law in the State of New York.

By Order dated July 17, 1987, the state court appointed a receiver in connection with the Property. On June 22, 1988, the state court granted Hudson's motion to confirm a report of a referee and issued an order of foreclosure and sale of the Property. By *ex parte* order dated July 13, 1989, the state court amended its original order to increase the amount due Hudson from $1,685,652.20 to $2,178,363.60.

By order dated March 31, 1989, this court conditionally granted Hudson's motion for relief from the automatic stay in accordance with 11 U.S.C. § 362(d). *See Trustee's 13(h) Statement*, at Exhibit 10. This Order required the debtor to become current on its obligations within 105 days, otherwise the stay was vacated as it applied to Hudson without Hudson having to make further application to the court. The debtor failed to become current and therefore the automatic stay was vacated as it applied to Hudson.

The Mortgage between the debtor, as mortgagor, and Hudson, as mortgagee, was a nonrecourse obligation. The Mortgage granted to Hudson additional security, as follows:

That the Mortgagor hereby assigns to the Mortgagee, *as further security for the payment of the indebtedness se-*cured hereby, *the rents, issues and profits of the Premises,* together with all leases and other documents evidencing such rents, issues and profits *now or hereafter in effect....* The Mortgagee, however, hereby waives the right to enter upon and take possession of the Premises for the purposes of collecting said rents, issues and profits, and the Mortgagor shall be entitled to collect and receive the same until the occurrence of default ... by the Mortgagor.

*Mortgage,* at ¶ 16 (emphasis added). Paragraph 58 of the mortgage provides in relevant part as follows:

Notwithstanding anything to the contrary contained herein, by accepting this Mortgage and Note, the Mortgagee agrees that the promise of the Mortgagor contained in the Note to pay the principal amount thereof with interest, is included therein for the sole purpose of establishing the existence of said indebtedness, *the Mortgagee's source of satisfaction of said indebtedness being limited to the Premises, the rents, issues and profits therefrom,* the Building Equipment and the rights in condemnation awards and insurance policies and proceeds herein described, and that the Mortgagee will not seek to enforce out of any other assets of the Mortgagor or its principals any judgment for any sum of money which is or may be payable under the Note or hereunder, or for any deficiency remaining after foreclosure of this Mortgage....

*Mortgage,* at ¶ 58 (emphasis added).

Before the Chapter 11 petition was filed, the debtor's general partner, DBG, had commenced a tax certiorari action on behalf of the debtor against the Town of Greenburgh, the Village of Dobbs Ferry, the County of Westchester and the Dobbs Ferry School District ("Taxing Authorities") to reduce the real estate tax assessment on the Property and recover any excess real estate taxes previously paid. Defendant Jeffrey S. Rodner ("Rodner"), an attorney practicing law with offices in Bronxville,

New York, was retained to pursue the tax certiorari proceedings.

As a result of Rodner's efforts, the debtor and the Taxing Authorities negotiated a settlement and entered into a stipulation dated August 11, 1988. The debtor executed this stipulation five days after it filed its bankruptcy petition, without the authority of this court and through an attorney, Rodner, not retained by order of this court. The Supreme Court entered an Order on September 15, 1988, on which the County Attorney of Westchester signed off, directing the Taxing Authorities to issue checks for the tax refunds to Rodner. The Town of Greenburgh issued a check to Rodner for $542.12. In addition, Rodner received checks from Dobbs Ferry Board of Education, Village of Dobbs Ferry and Westchester County in the sums of $81,329.24, $27,559.70 and $31,548.21, respectively. *See Plaintiff's 13(h) Statement*, at Exhibit 16.[1] The Order also required Rodner "to hold the proceeds as trust funds for appropriate distribution" and required Rodner and his firm to "remain subject to the further jurisdiction of this Court in regard to their attorneys' lien, pursuant to Judiciary Law § 475." *Id.* at Exhibit 15. The checks totalled $140,979.27, of which Rodner deposited $73,626.00 in escrow, taking $67,353.27 for attorney's fees, disbursements and appraisal fees.

On March 7, 1989, Rodner advised the debtor that a tax recovery in the sum of $73,626.00 had been awarded to the debtor and that Hudson, the mortgagee, was claiming a right to possession of the proceeds. *See Rodner's Cross–Motion for Summary Judgment*, at Exhibit G. Rodner placed the money in escrow on March 9, 1989, pending the direction of the Bankruptcy Court or an agreement between the debtor and Hudson.

On or about August 22, 1989, Lehrman, on behalf of Hudson, served on Rodner a Restraining Notice to Garnishee and an Information Subpoena, regarding any assets he was holding in escrow. On September 6, 1989, in compliance with a Sheriff's levy, Rodner issued a check in the amount of $75,144.26 to Anthony Morra, Sheriff of Westchester County. That sum represented the entire refund from the tax certiorari proceedings including interest, net of Rodner's claimed fees and expenses.

The funds which the Sheriff remitted to Hudson were less than the $94,016.48 which Hudson paid towards the debtor's real estate tax liability as a result of the debtor's default under the mortgage. *See Referee's Report*, at Schedule C (attached as Exhibit 4 to Trustee's 13(h) Statement). However, it is unclear as to the years for which the Taxing Authorities issued the refunds. Hudson has stated that it paid towards taxes $46,495.97 in 1986, $85,506.21 in 1987, and $19,458.42 in 1988. The report of the state court referee found that for the period January 1, 1987 through April, 1988, Hudson paid $94,016.48 towards the taxes assessed against the mortgaged property. Rodner's Closing Statement, attached as Exhibit 17 to the trustee's Local Rule 13(h) Statement, states that the tax certiorari refunds were for tax years 1984 through 1989, depending on the particular Taxing Authority. Accordingly, it appears that the tax certiorari refund recovered by Rodner was for years other than those for which Hudson claims to have paid.

Lehrman appealed this court's order filed February 8, 1993 denying its motion to remand the trustee's Amended Complaint to state court. In affirming this court's decision, the District Court held:

If, as the pleading clearly shows, the mortgage was a non-recourse obligation limited to the *collateral described therein*, and no deficiency judgment was issued by the state court, or authorized, either by the modification of the bankruptcy stay *or the terms of the mortgage*, the issuance of an execution on the tax refund escrow (a chose in action, and

---

1. Exhibit 16 does not contain a copy of the check that the Village of Dobbs Ferry issued to Rodner on behalf of the debtor in the amount of $27,559.70. However, Rodner's Closing Statement recites $27,559.70 as the amount received from the Village of Dobbs Ferry. *See* Exhibit 17.

personal property) would be a classic case of deceit by a lawyer.

*Jeffrey L. Sapir v. Hudson Realty Co., et al.*, 158 B.R. 15, 17 (S.D.N.Y.1993) (emphasis added).

### The Amended Complaint

On July 30, 1989, the Chapter 7 trustee filed a Summons and Complaint with this court, which has since been amended, commencing an adversary proceeding against Hudson, Rodner, Lehrman, Kahn and Ratet, who subsequently filed Answers with Affirmative Defenses.

The first claim in the trustee's Amended Complaint alleges that the order granting relief from the automatic stay did not permit Hudson to proceed against any other asset of the debtor, including the escrow proceeds. It further alleges that on May 21, 1992, the plaintiff demanded that the defendants Hudson, Kahn and Ratet deliver the monies to the trustee and that these defendants failed or otherwise refused to deliver the monies. The trustee seeks the return of these funds pursuant to 11 U.S.C. §§ 549 and 550 of the Bankruptcy Code.

The second claim alleges that the escrow proceeds constituted property of the estate of the debtor pursuant to 11 U.S.C. § 541, and that defendants Hudson, Kahn and Ratet knew of this fact. Moreover, the Restraining Notice and Execution were materially false in that Hudson was not entitled to the monies. It is further alleged that Hudson, Kahn and Ratet knowingly violated 11 U.S.C. § 362 by enforcing a claim against the escrow proceeds. The trustee seeks to hold Hudson, Kahn and Ratet in contempt pursuant to 11 U.S.C. § 105 for violation of the stay.

The trustee asserts in its third claim against Lehrman that Lehrman knew that the Restraining Notice and Execution were materially false. The trustee alleges that by serving the materially false Restraining Notice and in enforcing the Execution, Lehrman engaged in collusion and deceived the debtor and its agent Rodner, in violation of § 487 of the New York Judiciary Law. N.Y.Jud.Law § 487 (McKinney

1992). The trustee therefore seeks to recover treble damages.

The trustee alleges that the Restraining Notice was materially false in that it:

(1) Referred to a judgment entered on June 24, 1988 as a money judgment, whereas it was a foreclosure and sale judgment;

(2) Referred to a judgment in the sum of $2,178,363.60, whereas the original judgment was for $1,685,652.20, although later amended by court order to $2,178,363.60.

(3) Alleged that $2,178,363.60 from the foreclosure judgment remained due and payable when in fact the property had been sold to Hudson Realty at the foreclosure sale for the value of the mortgage and that, in accordance with Paragraph 58 of the mortgage, Hudson Realty was barred from enforcing the foreclosure judgment against Rosalind Gardens Associates or any other property.

In its fourth claim, brought only against Rodner, the trustee seeks return of the escrowed funds pursuant to 11 U.S.C. §§ 549 and 550. The fifth claim alleges that Rodner, as the attorney for the debtor, breached his fiduciary duty to the debtor as its tax attorney by wilfully violating the automatic stay and refusing to deliver the escrowed funds to the trustee. Moreover, the trustee alleges a breach of fiduciary duty based on Rodner's alleged failure to notify the debtor of the sheriff's execution. The fifth claim also alleges that Rodner overcompensated himself from the proceeds of the tax certiorari refund. The trustee seeks punitive damages under the fifth claim.

Hudson, Ratet and Kahn have moved jointly for summary judgment to dismiss the trustee's Amended Complaint pursuant to Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56. Lehrman and Rodner have filed separate cross-motions for summary judgment to dismiss the trustee's Amended Complaint.

### DISCUSSION

In ruling on a motion for summary judgment, the court must review the pleadings,

depositions, answers to interrogatories, admissions and affidavits, if any, to determine if there is no genuine issue as to any material fact so that the moving party is entitled to a judgment as a matter of law. Fed.R.Bankr.P. 7056; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 599, 106 S.Ct. 1348, 1362, 89 L.Ed.2d 538 (1986). The nonmoving party may oppose a summary judgment motion by making a showing that there is a genuine issue as to a material fact in support of a verdict for that party. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

### *Violation of the Automatic Stay*

■ The essence of the trustee's Amended Complaint, set forth in the second claim, is that Hudson held a nonrecourse mortgage and that the sole source for satisfaction of the mortgage debt was the premises including the rents and profits therefrom and insurance policies and proceeds. The trustee argues that Hudson and its attorneys could not seek to recover a deficiency judgment and could not treat the foreclosure judgment as a money judgment enforceable against the refunded tax certiorari proceeds held by Rodner. Accordingly, the trustee maintains that Hudson's enforcement of the foreclosure judgment by execution against the tax certiorari proceeds constituted a violation of the automatic stay imposed under 11 U.S.C. § 362(a).

It is upon this alleged violation of the stay that the trustee bottoms his second claim in the Amended Complaint. The

trustee seeks to hold Hudson, Ratet and Kahn in contempt based on the allegation that these defendants knew that the Restraining Notice and Execution were materially false. The trustee asserts that the Restraining Notice and Execution claim a money judgment of $2,178,363.60, when in fact the foreclosure judgment made no award of money damages, except for an award of $1,685,654.20 plus $1,000 as costs and disbursements and $10,227.50 as an additional allowance out of the proceeds of the sale.

Hudson contends that the tax certiorari refunds are additional security granted to Hudson in the Mortgage and that on March 31, 1989, this court entered an order granting Hudson's motion for relief from the automatic stay as it applied to Hudson. Once relief from stay was granted, Hudson argues that it was entitled to enforce the resulting foreclosure judgment against the tax certiorari proceeds as additional security under the Mortgage.

■ There is no question that the right to rents under a prepetition assignment of rents clause in a mortgage, or the right to tax certiorari refunds, must be determined under New York law. *See Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). The Second Circuit has held that while the federal Bankruptcy Code determines what may constitute property of the estate, "state law determines the 'nature of the debtor's interest' in a given item." *In re Koreag Controle Et Revision S.A.,* 961 F.2d 341, 349 (2d Cir.) (citation and quotation omitted), *cert. denied,* — U.S. —, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992).

The trustee argues that even if the court looks to New York State law, Hudson's motion for summary judgment must be denied. The trustee contends that under New York State law, the payor of the taxes is the person entitled to the refund, citing N.Y.Real Prop.Tax Law § 726 (McKinney 1992).[2] Therefore, pursuant to section 726,

---

2. Section 726(b) states in relevant part:
   When such tax or other levy shall have been imposed by the appropriate board or body of

any city, town or village, *there shall be audited and paid to the petitioner or other person paying such tax or other levy* in the same

a property tax refund is made to the party who paid the tax. *Adam Jay Associates v. Board of Assessors of County of Nassau et al.*, 62 N.Y.2d 880, 467 N.E.2d 514, 478 N.Y.S.2d 850 (1984). In *Adam Jay*, a property owner-mortgagor brought a tax certiorari proceeding to recover a tax refund in connection with tax payments made by the assignee of the mortgagee. The court held that the mortgagee was in fact entitled to the refund because the mortgagee had made the actual tax payments. *Id.* at 881, 467 N.E.2d 514.

In the present case, the trustee asserts that the Report of the state court Referee found that Hudson paid $94,016.48 towards the taxes assessed for the period from January 1, 1987 through April, 1988. While Hudson as the payor of these taxes was authorized to receive, as a matter of law, a refund resulting from their payment of these taxes, there is nothing in the record to indicate that the refund that Rodner obtained was for overpayment of these specific years. Rodner sought refund for excess payments made for several years.

The trustee's position misunderstands the difference between Hudson's ability to recover the tax refund as payor and its right to recover the tax refund as additional security pursuant to the Mortgage on which it foreclosed. In *River Bank America v. Kaufman*, Index No. 1634/92 (Supreme Court, N.Y. County July 10, 1992) (attached as Exhibit A to Addendum to Hudson's Memorandum), the court held that a receiver rather than the owner-mortgagor was entitled to the proceeds of a tax certiorari settlement because the mortgagee had received rents as additional security pursuant to the mortgage which stated:

> The mortgagee shall then have the right to ... receive all the rents, issues, profits, *and all other amounts past due, due or to become due to the mortgagor or any subsequent owner of the premises....*

manner as city, town or village charges, as the case may be, the amount paid by him in excess of the amount which would have been paid had the assessment been made as deter-

*Id.* at 3 (emphasis in original). *See also Gettinger v. Equitable Life Assur. Soc. of United States*, 80 N.Y.S.2d 661 (N.Y.Sup. 1948). The *Kaufman* court stated:

> The general rule is that as between the owner and a mortgagee, the former is entitled to the rents and hence to any refund of taxes paid until there is a default and the mortgagee has had a receiver appointed by the court or has obtained an assignment of rents.

*Id.* (quoting *Balbrook Realty Corp. v. Mills*, 295 N.Y. 190, 194, 66 N.E.2d 50 (1946)).

Pursuant to paragraph 16 of the Mortgage, Hudson received as additional security, the rents, issues and profits, "now or hereafter in effect." When the debtor defaulted, the rents, issues and profits, and therefore the tax certiorari refunds, were assigned to Hudson pursuant to the Mortgage. Hudson had a perfected security interest in the rents, and hence the tax certiorari refunds and had a right to enforce its security interest in the rents because it moved for and obtained the appointment of a receiver in state court. *In re Constable Plaza Associates*, 125 B.R. 98, 101 (Bankr.S.D.N.Y.1991). Rents, and therefore the tax certiorari proceeds were cash collateral as of the commencement of the bankruptcy case. *In re Vienna Park Properties*, 976 F.2d 106 (2d Cir.1992); *In re Carmania Corp., N.V.*, 154 B.R. 160 (Bankr.S.D.N.Y.). Accordingly, because the court has held that a tax refund escrow is additional security under the Mortgage and Hudson received relief from the stay to foreclose on the Mortgage, Hudson could procure the issuance of an execution based on the foreclosure judgment in order to proceed against the tax certiorari refund. Hudson, Ratet and Kahn cannot be held in contempt because in proceeding to execute on the tax certiorari escrow held by Rodner, the defendants did not violate the automatic stay. Hudson's motion for summary judgment should be granted and the trustee's second claim should be dismissed.

mined by such order, together with interest thereon as provided in subdivision two of this section.
*Id.* (emphasis added).

In the third claim of the Amended Complaint, the trustee alleges that Lehrman violated section 487(1) of the New York Judiciary Law.[3] Lehrman has cross-moved for summary judgment dismissing the third claim. The trustee argues that Lehrman was guilty of deceit and collusion with intent to deceive the court or a party because Lehrman could not satisfy the amended $2,178,363.60 foreclosure judgment from the proceeds of the tax certiorari refund.

As this court noted earlier in this opinion, Lehrman was entitled to look to the tax certiorari refund as a source of satisfying its client Hudson's foreclosure judgment. Therefore, because Hudson was entitled to execute on the tax refund and did not violate the automatic stay, the trustee would not be able to establish an "injury" resulting from the execution as required by section 487. Consequently, Hudson's motion for summary judgment should be granted as to the trustee's third claim and the third claim dismissed.

■ The first claim of the trustee's amended Complaint is directed at Hudson, Kahn and Ratet while the fourth claim is directed at Rodner. These claims seek a turnover of the escrowed proceeds pursuant to 11 U.S.C. §§ 549 and 550.

The underlying misconception in both the first and fourth claims is the trustee's contention that it is entitled to possession of the escrowed proceeds pursuant to 11 U.S.C. §§ 549 and 550. An unauthorized post-petition transfer of property of the estate may be avoided under 11 U.S.C. § 549. However, this section contains a statute of limitations which provides:

(d) An action or proceeding under this section may not be commenced after the earlier of—

(1) two years after the date of the transfer sought to be avoided; or

(2) the time the case is closed or dismissed.
11 U.S.C. § 549(d)(1) & (2).

In the instant case, defendant Rodner issued a check to the Sheriff for the escrowed funds on September 6, 1989. The trustee's time to commence an action to avoid this transaction expired two years later on September 6, 1991. The trustee belatedly commenced this adversary proceeding on July 30, 1992 when he filed his Summons and Complaint with this court. The two-year statute of limitations begins to run from the date of the transfer and not from the date of the appointment of the trustee. *In re 31–33 Corp.*, 100 B.R. 744, 747 (Bankr.E.D.Pa.1989); *In re Haugen Construction Service, Inc.*, 88 B.R. 222, 224 (Bankr.D.N.D.1988); *In re Sattler's, Inc.*, 73 B.R. 780, 791 (Bankr.S.D.N.Y. 1987); *In re H.I.A. of Mt. Vernon*, 80 B.R. 944, 945 (Bankr.S.D.Ill.1987); *In re Majesto Electro Industries, Ltd.*, 71 B.R. 84, 86 (Bankr.M.D.Pa.1987); *In re De Berry*, 59 B.R. 891, 898 (Bankr.E.D.N.Y.1986).

The trustee might have argued that the time limitations of 11 U.S.C. § 549(d) do not limit a trustee's ability to recover property transferred in violation of the stay imposed under 11 U.S.C. § 362. *See In re Schwartz*, 954 F.2d 569, 573–74 (9th Cir. 1992); *In re Germansen Decorating Inc.*, 149 B.R. 517, 520 (Bankr.N.D.Ill.1992). However, because the court has held that Hudson did not violate the automatic stay in executing on the tax refund escrow, the two-year statute of limitations set forth in section 549(d)(1) expired prior to the filing of this adversary complaint. Moreover, 11 U.S.C. § 550 may not appropriately be employed against Ratet, Kahn or Rodner, who held the tax refund in escrow until execution by the Sheriff. Because this court has held that the trustee's claims under section 549 are untimely, the section 550 claims, which are based upon the section 549 claims, should be dismissed. Accordingly,

---

3. **§ 487. Misconduct by attorneys**
     An attorney or counselor who:
     1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;
     . . . .

Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.
N.Y. Judiciary Law § 487(1) (McKinney 1983).

Hudson's motion for summary judgment and Rodner's cross-motion for summary judgment should be granted and the first and fourth claims dismissed.

■ The fifth claim charges that Rodner breached his fiduciary duty by paying the tax certiorari refund to the Sheriff, withholding his fees from the refund, and failing to inform the debtor that he had been served with the Restraining Notice and Execution. As this court has held earlier in this opinion, Hudson properly executed upon the tax refunds held by Rodner, therefore Rodner did not violate his fiduciary duty to the debtor by releasing the funds to the Sheriff upon execution and notified the debtor by letter of Hudson's claim to the funds. Moreover, Rodner notified the debtor by letter that Hudson claimed the tax certiorari refunds he was holding in escrow. The debtor is barred by the doctrine of laches from asserting any claim regarding Rodner's fee. However, this court need not address the question of laches because the state court retained jurisdiction over Rodner's fees in connection with the tax certiorari action pursuant to the Stipulation between Rodner and the Taxing Authorities. Consequently, Rodner's cross-motion for summary judgment should be granted and the fifth claim of the trustee's Amended Complaint dismissed.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter of this proceeding under 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(E).

2. Hudson properly executed on the tax certiorari refund as additional security under the Mortgage upon which it foreclosed and therefore did not violate the automatic stay. Hudson's motion for summary judgment is granted as to the trustee's second claim for relief in the Amended Complaint and the second claim is dismissed.

3. Lehrman properly executed on the tax certiorari refund and therefore did not violate section 487 of the New York Judiciary law. Lehrman's cross-motion for

summary judgment is granted and the trustee's third claim of his Amended Complaint is dismissed.

4. The trustee is time-barred by the two-year statute of limitations imposed under 11 U.S.C. § 549(d)(1) from recovering the tax certiorari refund pursuant to 11 U.S.C. § 549. Consequently, the trustee's claims under section 550 are not viable. Therefore, Hudson's motion for summary judgment is granted and the first claim of the trustee's Amended Complaint is dismissed. Similarly, Rodner's cross-motion for summary judgment in connection with the trustee's fourth claim is granted and the fourth claim is dismissed.

5. Rodner's cross-motion for summary judgment is granted and the fifth claim of the trustee's Amended Complaint is dismissed.

6. The defendants are entitled to an order for summary judgment dismissing the Amended Complaint.

SETTLE ORDER ON NOTICE IN ACCORDANCE WITH THE FOREGOING.