**In re Donald Groover HIERS, Debtor.**

**Bankruptcy No. 3–87–01154.**

United States Bankruptcy Court,
E.D. Tennessee.

Aug. 12, 1987.

Margaret Fugate, Johnson City, Tenn., for debtor Donald Groover Hiers.

Baker, Worthington, Crossley, Stansberry & Woolf, R. Louis Crossley, Jr., Knoxville, Tenn., for respondent The Original Great American Chocolate Chip Cookie Co., Inc.

### MEMORANDUM ON PETITION FOR CONTEMPT

RICHARD STAIR, Jr., Bankruptcy Judge.

At issue is whether the actions of The Original Great American Chocolate Chip Cookie Company, Inc. (respondent) constitute a willful violation of the automatic stay entitling Donald Hiers (debtor) to recover damages. 11 U.S.C.A. § 362(h) (West Supp.1987).

### I

On May 12, 1987, Michael J. O'Connor, an attorney, filed a Chapter 13 petition on behalf of the debtor.[1] Respondent's

---

1. Because O'Connor would be a necessary witness, the court authorized him to employ Mar-

attorney has stipulated that respondent had notice of the bankruptcy filing. At the time of the filing of the petition the debtor was the sublessee in possession of certain premises, leased from the respondent, in the Johnson City Mall. Debtor, doing business on these premises as a licensee of the respondent, owned the equipment on the business premises. He ceased such business near the end of May 1987.

On May 27, 1987, fifteen days after the filing of debtor's Chapter 13 petition, respondent's attorney, Jeff Anderson, phoned O'Connor to obtain permission to take physical possession of the leased premises. O'Connor assented and, after learning the locks at the premises had been changed within hours of their conversation, wrote the following letter, dated May 27, 1987, to Anderson:

Dear Mr. Anderson:

·This letter will serve to confirm our telephone conversation of this date in which we agreed that although the locks had been changed at Dr. Hier's franchise operation in the Johnson City Mall, The Original Great American Chocolate Chip Cookie Company ("Cookie Company") does not assert any claim on the equipment located in the premises which he subleased from the Cookie Company.

Dr. Hiers remains amenable to the sale of all or part of the equipment to the Cookie Company. You may wish to renew this offer to your client and see if they are willing to purchase the equipment at a fair market price. Since Dr. Hiers no longer has access to the store, it is understood that reasonable notice will have to be given requesting that he move his equipment. Until the equipment is moved, the Cookie Company may store its batter in the outside refrigeration unit.

If I have inaccurately stated any aspect of our conversation, then please advise immediately so that the misunderstanding can be cleared up. I am still hopeful that a settlement can be reached regarding the amount of the Cookie Company's claim in Dr. Hier's Chapter 13 case. I look forward to hearing from you, and remain,

Yours very truly,
Michael J. O'Connor
Attorney at Law

Anderson did not subsequently protest that the understanding expressed in O'Connor's letter differed from their prior phone conversation.

Anderson got the impression from O'Connor that the debtor was going to pick up his equipment during the afternoon of May 27, 1987. Accordingly, he arranged for an official of respondent to be present at the business premises. However, when the debtor had not arrived by 7:30 p.m. the official left. Apparently the debtor did arrive after respondent's official had departed. He could not remove his equipment because the locks had been changed. He was unaware of O'Connor's agreement with Anderson to: (1) surrender possession of the premises to respondent and (2) give reasonable notice to respondent of intent to remove the equipment. On the evening of May 27, 1987, the debtor was accompanied by his daughter, who jumped over the counter at the business premises.

On May 28, 1987, Anderson informed O'Connor that respondent had instructed him not to allow the debtor to remove any assets from the business premises. Anderson indicated to O'Connor that respondent did assert an interest in the equipment on the premises. He referred O'Connor to the license agreement between the respondent and the debtor and contended the agreement gave respondent a security interest similar to a right of setoff. At this time O'Connor told Anderson that the respondent was violating the automatic stay.

The next day, May 29, 1987, Anderson told O'Connor respondent had reconsidered and would permit removal of debtor's equipment, but respondent insisted that someone other than the debtor must actual-

garet Fugate for the purpose of representing the debtor at the hearing on his petition for con-

tempt.

ly remove the equipment. Respondent would not permit the debtor to enter the business premises. Later the same day Anderson advised O'Connor that respondent had again reversed its position and would not permit anyone to remove any of the equipment. Thereafter, Anderson notified O'Connor that respondent was willing to permit removal of all the equipment with the exception of the counters and heavy refrigeration equipment.

On June 1, 1987, Anderson called O'Connor to tell him respondent had moved some of the equipment to a vacant store site in the Johnson City Mall and that the debtor could come and get it. Anderson further told O'Connor that respondent would require a bond, in the amount of either $7,000.00 or $7,500,00, before the debtor could remove items from his former business premises. According to Anderson the purpose for the bond was to indemnify respondent for any damage to the counters that might occur as other items of equipment were removed. The debtor refused to post any bond. Further, O'Connor told Anderson the debtor would tolerate no more and that a petition for contempt would be filed.

On June 4, 1987, the debtor filed his "Petition For Contempt." Contending respondent's actions "constitute an egregious deprivation of his rights to possess property of the estate," the debtor requests an award of both actual and punitive damages.

## II

Section 362 of title 11 of the United States Code enacts in part:

*Automatic Stay*

(a) Except as provided in subsection (b) of this section [immaterial herein], a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

.        .        .        .        .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

. . . .

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C.A. § 362 (West Supp.1987).

The debtor testified that on May 28, 1987, he took a prospective purchaser to view the equipment at his former business premises. He had been told the equipment could be removed as long as he personally did not enter the premises. Any prospective sale was chilled when Anderson, who was also present, told the debtor not to remove anything from the premises.

Anderson testified it appeared to him a sale of the equipment was taking place when the debtor was at the business premises on May 28, 1987; he told the debtor to consult O'Connor because he knew a sale would have to be approved by the court. Anderson further testified he was conscious of the automatic stay, as was respondent; he made the decision not to permit removal of the equipment on May 28, 1987; respondent retained possession to prevent the sale of the equipment, but there was no intent to violate the automatic stay.

The proof adduced at the July 21, 1987 hearing on debtor's contempt petition refutes respondent's denial of any willful violation of the automatic stay. It is patently clear that respondent, in a conscious effort to preclude debtor from regaining possession of his equipment, attempted to, and did, exercise control over property of the debtor's estate in violation of the automatic stay.

■ Pursuant to § 362(h), the debtor is entitled to recover $204.00, representing a $4.00 expense plus $200.00 in lost income, and attorney fees of $1,556.00 and $720.00 for the services of Mr. O'Connor and Ms. Fugate, respectively. Further, because the violations of the automatic stay were willful, not innocent, the debtor shall also recover $1,000.00 from respondent as punitive damages with this sum to be paid

directly to Frank D. Gibson, the debtor's Chapter 13 trustee, for payment against all allowed claims upon confirmation of the debtor's plan; provided, however, that if the debtor's plan is not confirmed the trustee shall remit this sum to the debtor.