In re Robert and Cindy BAKER, Debtors.

In re Darlene D. LAURIE, Debtor.

Bankruptcy Nos. 94–12669, 94–12365.

United States Bankruptcy Court,
D. Rhode Island.

June 15, 1995.

Christopher Lefebvre, Pawtucket, RI, and Jonathan F. Oster, Lincoln, RI, for debtors Robert and Cindy Baker and Darlene D. Laurie.

John F. Pellizzari, Woonsocket, RI, and Paul D. Gould, North Smithfield, RI, for Norwest Financial Services, Inc.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on March 21 and 22, 1995, on the Debtors' motions for sanctions against Norwest Financial Services, Inc. and its attorney, John Pellizzari, Esq., for violating the automatic stay, 11 U.S.C. § 362(a), in the above-captioned cases. For reasons discussed in more detail below, we find that as to all three Debtors, Norwest and its counsel, clearly violated the automatic stay, and that said violations warrant the imposition of sanctions and an award of punitive damages.

## FACTS

### THE BAKER CASE:[1]

On November 21, 1994, Robert and Cindy Baker filed a voluntary joint Chapter 7 petition, and Norwest duly filed a proof of claim in the amount of $2,200, based on a purchase money loan for household furniture. Michael Rumney, Norwest's Branch Manager, testified that he has had no formal bankruptcy training, but that in consumer cases he routinely attends the § 341 meeting and attempts to obtain a reaffirmation agreement with the Debtors.[2] In this case, based upon pre-petition discussions with the Debtors, Rumney attended their § 341 meeting on December 20, 1994, in anticipation that the Debtors would reaffirm their debt with Norwest. When the Bakers declined to do so, Mr. Rumney was *really* disappointed. Upon leaving the § 341 meeting, he telephoned Norwest's attorney, John Pellizzari, Esq., and instructed him to repossess the furniture.

On February 7, 1995, a replevin action was filed in the Sixth Division District Court.[3] Pellizzari concedes that the filing of the replevin action constituted a violation of the automatic stay but, as is typical in these proceedings, argues that he did not act with malice since he did not have actual knowledge of the Bakers' pending bankruptcy. He explains that any stay violation was only technical, and was solely the result of the inexperience of Norwest's representatives and their misstatement of the facts to him, that Rumney informed him that "the bankruptcy was over," and that it was not deter-

---

1. On February 28, 1995, we granted the Bakers' request for sanctions against the Defendants for their intentional violation of the automatic stay. Before the Court for determination today is the amount of damages to be assessed.

2. Rumney testified that he has attended between ten to fifteen § 341 meetings on behalf of Norwest, and has rarely encountered difficulty in obtaining a signed reaffirmation agreement.

3. Mr. Pellizzari testified that this was the first replevin action he ever filed.

mined until after the filing of the replevin action that Rumney's assumption that the stay terminated upon the adjournment of the § 341 meeting, was an incorrect assumption. In what we regard as a total absence of basic diligence or prudence on his part, Pellizzari failed to verify the status of the case, and hastily filed the replevin action, based solely on instructions and information supplied by Rumney.

### THE LAURIE CASE:

Darlene Laurie filed her Chapter 7 petition on October 12, 1994, listing Norwest as a creditor in the amount of $1,450, and on November 4, 1994, Mr. Pellizzari appeared on behalf of Norwest at the § 341 meeting of creditors. At the meeting it was obvious to both Pellizzari and the Debtor's attorney, Christopher Lefebvre, Esq., that the Debtor wanted desperately to keep her furniture.[4] Leaving the meeting, counsel agreed that they "would be in touch" regarding the Norwest debt. Thereafter, Mr. Pellizzari states, he left two messages for Mr. Lefebvre, that both calls went unanswered, and that on November 22, 1994, he filed a Motion for Relief from Stay.

On December 6, 1994, Mr. Pellizzari received a telephone call from the Debtor, who asked him what type of payments Norwest would require to allow her to keep her furniture. Although he knew that the Debtor was represented by counsel at the time, Pellizzari testified that "the relationship between the Debtor and her counsel had deteriorated to a point where the Debtor was acting pro se in this matter."[5] On December 7, 1994, after consulting with Norwest, Mr. Pellizzari telephoned the Debtor and informed her that the debt could be reaffirmed if she agreed to pay $60 by the end of December, and $25 per month thereafter until the balance was paid in full. Not hearing from the Debtor, Pelliz-

zari called her again on December 12, 1994, to ascertain her intentions as to the reaffirmation, whereupon the Debtor replied that she had already mailed the $60 payment to Norwest. Mr. Pellizzari admonished her for sending the payment directly to Norwest (and not through him), and prepared a reaffirmation agreement which was mailed directly to the Debtor.[6]

Pellizzari argues that he did not consider his actions to be improper, but rather was looking out for the Debtor's best interest by accommodating her desire to keep her furniture, and by assisting in "a failed attorney-client relationship." Mr. Pellizzari asks this Court to accept a position that is clearly untenable, regardless of his stated motives. If all debtors were allowed to be "assisted" by creditors in this manner, there would be little or no value in the Bankruptcy Code's fresh start policy, or in any of the reaffirmation safeguards.

### DISCUSSION

Under § 362(h), "[a]n individual injured by any willful violation of a stay provided by this section *shall* recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h) (emphasis added). It is clear, based on the evidence presented in these two cases, that both Defendants knowingly violated the automatic stay.

In *Baker*, Mr. Rumney conceded that he received the § 341 meeting notice, which contained the details of the automatic stay, and that he attended and participated in the first meeting of creditors. At the time Mr. Pellizzari was retained by Norwest he knew of the Bakers' bankruptcy, but failed to independently investigate whether the Debtors

---

**4.** Mr. Lefebvre testified that after the § 341 meeting, the Debtor was in tears at the prospect of losing her furniture. He advised Ms. Laurie not to worry about it, and that "he would take care of it for her."

**5.** Mr. Pellizzari admits that he did not attempt to call Mr. Lefebvre or send any correspondence to advise him that Ms. Laurie was making direct contact with him. He does state that he told the Debtor to call her attorney.

**6.** Laura Haroszoway, the Norwest employee assigned to handle the Debtor's account, testified that she was surprised at the acceptance of her initial offer, because in prior dealings with Attorney Lefebvre she would be fortunate to receive a return phone call, let alone a reaffirmation agreement in the full amount of the claim.

had received their discharge before filing the replevin action.[7] That determination could have been made with a single telephone call to the Bankruptcy Court Clerk's Office.

In *Laurie,* while he was having direct conversations with the Debtor, Mr. Pellizzari was aware of the automatic stay and the fact that Mr. Lefebvre was Debtor's counsel of record. He argues, however, that he did not negotiate a reaffirmation agreement with the Debtor, but merely informed her as to Norwest's position regarding a reaffirmation. We reject this contention, and find that Mr. Pellizzari's conversations and contacts with the Debtor amount to the negotiation of and an attempt to obtain a reaffirmation agreement. We also conclude that these actions constitute an intentional violation of the automatic stay. *See In re Flynn,* 143 B.R. 798, 802–803 (Bankr.D.R.I.1992).[8]

The facts of these cases, taken collectively, call for an award of punitive damages. *See Crysen/Montenay Energy Co. v. Esselen Assoc. (In re Crysen/Montenay Energy Co.),* 902 F.2d 1098 (2nd Cir.1990) (a malicious or bad faith violation of the automatic stay justifies the imposition of punitive damages); *Flynn,* 143 B.R. at 803. It is not this Court's primary intent, however, to punish either Mr. Pellizzari or Norwest for the acts complained of. Rather, our goal is to achieve compliance by this creditor and this attorney (as well as other creditors and attorneys who appear before this Court), with the automatic stay provisions of the Bankruptcy Code. Therefore, as in *Flynn,* under our 11 U.S.C. § 105 authority, and until further order, Mr. Pellizzari and Norwest are permanently enjoined from initiating or engaging in any direct contact with these or any other Debtors before this Court, while they are represented by counsel.

On the issue of punitive damages, Norwest and its attorney have the option, if exercised within 45 days, to furnish the Court, the United States Trustee, and Debtors' counsel with a formal statement of policies and procedures, including the protections afforded under § 362, to be followed when a debtor files for bankruptcy. Said procedures, if promulgated, should be accompanied by a detailed explanation of and a representation that Norwest agents and employees have received training in and are familiar with said procedures. Alternatively, if Norwest and its counsel decline to implement such internal policies, then punitive damages are awarded in the amount of $2,500 in each case under § 362(h) for said intentional violations of the automatic stay herein, for which Norwest and its counsel are jointly and severally liable.

Finally, Norwest and its attorney are determined to be jointly and severally liable for the legal fees incurred herein by the Debtors. Their respective counsel, Christopher Lefebvre, Esq., and Jonathan Oster, Esq., should submit their bills to Norwest and counsel within 10 days. If the parties cannot agree on the reasonableness of the fee requests, the Court will intervene. Because there was insufficient evidence in either case on the issue of compensatory damages suffered by the Debtors, we make no such award.

Enter Judgment consistent with this opinion.

---

7. *See* 11 U.S.C. § 362(c).

8. As in *Flynn,* Pellizzari's direct contact with the Debtor while she was represented by counsel was ethically improper and may constitute a violation of Rule 4.2 of the Rhode Island Rules of Professional Conduct.