**In re Ernest E. ERICKSON, d/b/a Erickson's Nursery, Debtor.**

**Bankruptcy No. 5–93–319.**

United States Bankruptcy Court, D. Minnesota, Fifth Division.

June 20, 1995.

---

David A. Orenstein, Minneapolis, MN, for debtor.

Michael J. Farrell, Chapter 12 Trustee, Barnesville, MN.

Max J. Ruttger, III, Brainerd, MN, for Ryan, Ruttger & Drake, P.A., as a scheduled creditor.

## ORDER DENYING MOTION "TO PROCEED WITH CHAPTER 12 CASE"

GREGORY F. KISHEL, Bankruptcy Judge.

This Chapter 12 case came on before the Court on January 12, 1995, for hearing on the motion of Ernest E. Erickson, Jr. for an order authorizing the continuation of this case and the administration of the bankruptcy estate notwithstanding the death of the named debtor. Upon the moving and responsive documents, the record made at the hearing, and all of the other relevant files, records, and proceedings in this case, the Court makes the following order.

The named debtor, Ernest E. Erickson, was a resident of Brainerd, Minnesota. He conducted business in the nursery and landscaping trade in the Brainerd area for several decades. At all relevant times, he operated his business as a sole proprietorship, employing members of his immediate family in both management and production phases of the operation.

On June 23, 1993, the Debtor commenced this case by filing a voluntary petition for relief under Chapter 11. On December 10, 1993, the Court granted his motion to convert the case to one for family farmer reorganization under Chapter 12.[1] The Debtor then timely filed a plan of reorganization, and obtained confirmation of it on April 7, 1994. After that, he continued to operate the family nursery and its ancillary landscaping business, with the assistance of his wife and sons. At all relevant times, he remained current on payments under his confirmed plan; as reported by the Trustee at the hearing on the motion at bar, there was no default on account of the plan as of early January, 1995.

After he filed his plan, the Debtor commenced two adversary proceedings that involved a common defendant. In the first, *Erickson v. Ruttger, et al.*, ADV 5–94–9, he sought a money judgment against his former attorney and the attorney's spouse, alleging that those defendants had failed to fully pay him for landscaping work he had rendered at their homestead. In the second, *Erickson v. Ryan, Ruttger & Drake, P.A., et al.*, ADV 5–94–11, he sued that same attorney, his law firm, and all of its shareholders. In the complaint for the latter proceeding, the Debtor alleged that the attorney had committed malpractice during the course of his representation of the Debtor in a lawsuit in the Crow Wing County District Court, and that the resultant entry of judgment had caused the financial stress that required him to file for bankruptcy relief. Both adversary proceedings have gone ahead through the stages of litigation.

On October 21, 1994, the Debtor died unexpectedly. Since his death, the members of his family have carried on the business and have assisted counsel in the pending litigation. On December 13, 1994, the Court denied a motion to "appoint" the Movant as an "agent" for the Debtor, so as to vest him with the power to prosecute *Erickson v. Ruttger, et al.*, ADV 5–94–9.[2]

---

1. No creditor or other party in interest objected to this motion. In his supporting documents, the Debtor demonstrated to the Court's satisfaction that the nature of his nursery operations qualified him as a "family farmer with regular annual income" within the definitions of 11 U.S.C. §§ 101(18)–(21). As such, he was statutorily eligible under 11 U.S.C. § 109(f) for this form of reorganization.

2. Counsel styled this earlier motion under the following language of FED R.BANKR.P. 9010(a):

(a) **Authority to Act Personally or by Attorney.** A debtor ... or other party may (1) appear in a case under the [Bankruptcy] Code and act either in the entity's own behalf or by an attorney authorized to practice in the court, and (2) perform any act not constituting the practice of law, by an authorized agent, attorney in fact, or proxy.

To support the motion, counsel argued that the act of the Debtor in naming the Movant as his personal representative in his will equated to a specific authorization to make an appearance in

The motion at bar follows on the heels of the earlier one. While styled somewhat differently, the Movant seeks the same result in a more "global" sense. He invokes FED. R.BANKR.P. 1016 [3] as his primary authority. Under color of this and other provisions of the Bankruptcy Code and Rules, several persons would be empowered to carry on the deceased Debtor's business, to continue performance under his confirmed plan, and to administer the bankruptcy estate. Each person would take on a specific share of the duties and functions that the Debtor formerly bore in their entirety. His surviving spouse and at least two of his children would continue to operate the business, doing the physical work, generating the income, and managing the cashflow. The Movant, acting as an "agent" pursuant to his status as special administrator and/or personal representative of the Debtor's probate estate,[4] would perform such "ministerial functions" as signing checks on the debtor-in-possession bank account through which the business revenues would continue to flow. The standing Chapter 12 Trustee would assume all of the remaining legal and functional duties in connection with the administration of the estate, to the extent that the Debtor had had such duties independent of the Trustee. There would be one exception: because the family members would continue to do so, the Trustee would be excused from "operating the debtor's farm," as otherwise contemplated by 11 U.S.C. §§ 1203 and 1202(b)(5).

This proposal is ingenious, and not without some attractiveness on its surface. It would leave the existing horticultural operation intact for the benefit of the Debtor's surviving spouse and several of his adult children, under the protection of the Bankruptcy Court and subject to the debt restructuring of his confirmed plan. In a non-technical sense, further administration of the estate on an operating basis is possible; at least as long as the family members continue to work the business with the nursery stock on hand, they can generate cashflow to funnel through the Trustee for payments under the plan. There is no evidence of record to counter the Movant's assertion that continuing the case would be in the best interests of the creditors that are entitled to ongoing distributions.

 Beyond this, no party to the case has raised a colorable defense to the motion. The Standing Trustee points to the currency of the cash inflow into his coffers as his main reason not to object to the movant's proposal. He takes no position on the legal merits. For some reason, the U.S. Trustee did not make an appearance on this motion despite its novel fact basis and deeper substantive dimension. The only objection is that of Ryan, Ruttger & Drake, P.A., a creditor whose invocation of abstract principles of jurisdiction is belied by its manifest self-interest in a denial of the motion.[5] Its main

---

court on his behalf. The Court rejected this argument.

**3.** In pertinent part, this rule provides:

Death or incompetency of the debtor shall not abate a liquidation case under chapter 7 of the [Bankruptcy] Code. In such event the estate shall be administered and the case concluded in the same manner, so far as possible, as though the death or incompetency had not occurred. If a ... family farmer's debt adjustment case is pending under ... chapter 12, ... the case may be dismissed; or if further administration is possible and in the best interest of the parties, the case may proceed and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred.

**4.** In a December 27, 1994 order, the Crow Wing County District Court, Probate Division, appointed the movant as special administrator of his father's probate estate. The Movant's petition to be appointed personal representative was pending when this Court heard the motion at bar.

**5.** As a defendant to the collection action pending as ADV 5–94–09, Max J. Ruttger, III succeeded in delaying the previously-scheduled trial in that matter by strenuously objecting to the movant's previous motion to be appointed as agent. Before that, his conduct during discovery proceedings in that matter resulted in motions to compel and for imposition of sanctions on him, both of which the Court granted. The record for these motions suggests a rear-guard strategy designed solely to avoid a day of reckoning in open court as long as possible. The record in the malpractice action does not contain comparable evidence of dilatoriness—probably because the firm retained independent counsel for its defense who has handled the matter quite professionally. However, the firm itself, as a party-defendant, stands to gain all the advantage of any delay that may be occasioned by continuing uncertainty over the proper forum and the identity of the successor party-plaintiff.

argument is terse, shallow, and without merit,[6] and its subsidiary argument does not quite hit the mark.[7]

Notwithstanding the lack of a meritorious objection by a party in interest, however, the motion at bar suffers from an organic infirmity that is just too substantial to ignore, and it must be denied.

 The reason is quite basic: a grant of the motion would leave all of the income-generating tangible assets of the estate in the possession and under the immediate control of persons who are not vested by law with the status of fiduciaries. One natural person petitioned for relief in this case, became a debtor in possession by operation of law, and then was chargeable with fiduciary duties to his creditors. He is now dead. Perforce, he can no longer carry out those responsibilities. His surviving spouse did not join in his original petition. In the technical terms of legal accountability to this Court, she is a stranger to this case. As a result, she cannot claim any sort of implicit right of survivorship to the status of debtor in possession. *In re Martin*, 26 B.R. 39, 40 (Bankr.D.W.Va.1982). Neither can the Movant; he did not join in the original petition either, and was legally incapable of doing so.[8]

The seat of the debtor in possession, then, was left utterly empty when the original petitioner died during the pendency of the case,[9] and it cannot be filled under the provisions of the Bankruptcy Code that apply to this case. There is no provision in Chapter 12 that allows for the substitution of another person or entity as debtor in possession in a pending case.

 This sole circumstance directs the outcome of this motion. It all stems from the fact that the status of debtor in possession imposes substantial responsibilities on the holder. The most salient and central of these is the obligation to subordinate one's own financial interests to those of one's creditors—the beneficiaries of the trust imposed by law upon the commencement of a bankruptcy case. *E.g., In re Burke*, 147 B.R. 787, 800 (Bankr.N.D.Okla.1992); *In re Spoor–Weston, Inc.*, 139 B.R. 1009, 1016–1017 (Bankr.N.D.Okla.1992). In the reorganization context, that obligation translates to a duty to utilize the continuing possession of the assets of the estate so as to promote creditors' interests in their value.[10] *In re Halux, Inc*, 665 F.2d 213, 216 (8th Cir.1981) (case under Bankruptcy Act of 1898); *In re Schmidt*, 145 B.R. at 986. As a fiduciary, the debtor in possession may not self-deal in the subject matter of the trust; it is legally

---

**6.** This argument was to the effect that art. 6, § 11 of the Minnesota state constitution "vests exclusive jurisdiction over a decedent's assets in the [state] probate court." It misses a very crucial point: the federal courts

> have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of [the debtor's bankruptcy] case ...

28 U.S.C. § 1334(e). Thus, as of the date of the Debtor's death, his non-exempt business assets *already reposed in the bankruptcy estate*—and at no time since have they been released so as to subject them to state-court jurisdiction once again. H.R.REP. No. 595, 95th Cong. 1st Sess. 368 (1977) U.S.Code Cong.Admin.News 1978 pp. 5787, 5963, 6173; *In re Osborne*, 120 B.R. 64, 70 (Bankr.N.D.Miss.1990).

**7.** This argument was that the state law of decedents' estates, rather than federal bankruptcy law, should be applied to determine the post-mortem disposition of the Debtor's business and its assets. State law properly identifies the appropriate successor(s) to the Debtor as holder of a subordinate "equity" interest in the business.

However, it cannot direct the outcome of the pending administrative process in bankruptcy where 28 U.S.C. § 1334(e) and FED.R.BANKR.P. 1016 so clearly govern.

**8.** Only "an individual that may be a debtor under [a] chapter [of the Bankruptcy Code] *and such individual's spouse*" may file a joint petition for relief under that chapter. 11 U.S.C. § 302(a) (emphasis added).

**9.** Had the Debtor incorporated his business, his shareholder's interest would have passed to his heirs or devisees through succession or probate. As long as the day-to-day management of the company remained stable through that process, this case could have gone forward with a viable, intact, and legally-cognizable debtor in possession.

**10.** In an "operating" reorganization case, this of course is accomplished by using the assets in the ordinary course of business to generate revenues out of which cash payments to creditors will be made. *In re Schmidt*, 145 B.R. 983, 986 (Bankr. D.S.D.1991).

chargeable with acting to preserve and enhance the estate's value so creditors' returns will be maximized. *In re Thurmond,* 41 B.R. 464, 465 (Bankr.D.Ore.1983).

■ In something more than an abstract sense, such heightened duties exceed those that could otherwise be imposed under contract, or pursuant to court order. At the very least, the imposition of a fiduciary status means that a creditor questioning the past performance of fiduciary duties bears a lighter burden of proof and persuasion in a court proceeding brought to vindicate the beneficiary of those duties.[11] This more stringent liability for lapses in duty is a significant incentive for honesty, fairness, and dispatch on the part of individual debtors in possession.

■ As the Code is now constituted, there is no way that the Court can vest a successor third party with any sort of fiduciary status in a Chapter 12 case, unless he or she is a standing trustee duly appointed by the U.S. Trustee pursuant to 28 U.S.C. § 586(b). Even then, this would be possible only when the standing trustee succeeds to a direct operating role pursuant to 11 U.S.C. § 1202(b)(5), after removal of the debtor from possession pursuant to 11 U.S.C. § 1204. This, of course, is not what the Movant proposes, and for an obvious reason: the deceased Debtor's family members want to retain the ownership and control of the business within their circle.[12] However, none of them are presently bound to fiduciary duties in this case, and they cannot be vested with them by fiat of the Court.[13] The Movant's request simply cannot be granted.

■ This leaves the question of where this case is to go, in light of that conclusion. Unfortunately, the stances of the parties are at loggerheads insofar as any progress in bankruptcy is concerned. There is no debtor in possession at the helm. The standing trustee is not willing to assume the operation of the nursery. There is no evidence that, before his death, the Debtor ever committed fraud in connection with the case; therefore, there is no basis for involuntarily dismissing the case pursuant to 11 U.S.C. § 1208(d).[14] There is not even a hint in the record that there are grounds for dismissal under 11 U.S.C. § 1208(c).[15] The Movant probably lacks standing to request a voluntary dismissal or conversion of this case, notwithstanding his "official" status under order(s) of the Probate Division of the Crow Wing County District Court.

■ Where an individual debtor in reorganization dies during the pendency of his case, the Federal Rules of Bankruptcy Procedure suggest the most appropriate disposition:

11. This principle applies when the performance is challenged toward prospective ends, as in a motion to convert a case to one for liquidation. It also applies when the focus of the enforcement proceeding is retrospective, as in an action for avoidance of unauthorized post-petition transfers, or for a determination of nondischargeability of the fiduciary's debt to the beneficiary in a subsequent bankruptcy case by the fiduciary.

12. They are perfectly reasonable in wanting to have it so. Given the local scope of past operations and the very personal touch that the Debtor gave to customer service, the very survival of the business probably hinges upon the maintenance of the goodwill that the Debtor built up over two-plus decades.

13. *In re Smith,* 6 B.R. 643 (Bankr.D. Hawaii 1980), the court reached a result that was close to what the Movant requests: it appointed the son of a deceased Chapter 11 debtor as a trustee, apparently pursuant to 11 U.S.C. § 1104(a).

*Smith,* however, does not furnish good authority for doing what the movant requests. A direct appointment by the court has never been available as a remedy in the District of Minnesota, it having been one of the "pilot districts" for the United States Trustee program. In any event, the *Smith* court's terse recitation of its substantive rationale is completely unconvincing.

14. Section 1208(d) also gives the option of conversion of the case to one under Chapter 7. However, if the Debtor's probate estate is the proffered successor to him, conversion is not available. *In re Jarrett,* 19 B.R. 413, 414 (Bankr. M.D.N.C.1982) (because probate estate is not eligible for bankruptcy relief, 11 U.S.C. § 1307(f) bars conversion of case of deceased Chapter 13 debtor to one under Chapter 7).

15. Entirely to the contrary, Ernest E. Erickson, Sr. seems to have been an exemplary reorganizing debtor while he was under the protection of the Court, and his survivors have carried forward in the same way.

In a Chapter 11 reorganization case or Chapter 13 individual's debt adjustment case, the likelihood is that the case will be dismissed.

Advisory Committee Note to FED.R.BANKR.P. 1016.[16] In the ordinary course, non-consensual dismissal of a bankruptcy case requires a formal motion, notice, and hearing. 11 U.S.C. §§ 707(a), 1112(b), 1208(c), and 1307(c); FED.R.BANKR.P. 2002(a)(5). No one has yet done this for this case. In the past, the Eighth Circuit has frowned on the Bankruptcy Court undertaking to dismiss a case *sua sponte. In re Terry,* 630 F.2d 634, 636 n. 5 (8th Cir.1980); *Noreen v. Slattengren,* 974 F.2d 75, 76 n. 4 (8th Cir.192) (both Chapter 13 cases). *See also In re Eads,* 135 B.R. 380, 383 (Bankr.E.D.Cal.1991). *But see, In re Windsor on the River Assoc., Ltd.,* 7 F.3d 127, 133 (8th Cir.1993) (in which *Court of Appeals* dismissed Chapter 11 case *sua sponte,* after concluding debtor could not possibly reorganize successfully). Since no one seems likely to step to the plate on the issue, however, and since dismissal is the only outcome of this case that is defensible under the governing law, the Court's role is clear. The parties will be allowed an appropriate length of time to evaluate the rulings herein and to move or act for any relief they deem appropriate, in this or another court, before this case is dismissed.

IT IS THEREFORE ORDERED:

1. That the motion of Ernest E. Erickson, Jr. for an order authorizing the continuation of this case and the administration of the bankruptcy estate is denied.

2. That, absent further order of this Court, an order dismissing this case will be entered on or after the 30th day after the date of this order.

**16.** This Advisory Committee Note was published with the initial promulgation of the current Federal Rules of Bankruptcy Procedure in 1983—over three years before the creation of family farmer reorganization in the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, PUB.L. No. 99–554. In 1991, the text of the rule was amended to add a reference to Chapter 12. Cases under Chapters 11, 12, and 13 all involve the same dynamic of debt restructuring under the jurisdiction of the Bankruptcy Court; Chapter 12 is built on a substantive structure taken directly from Chapter 13, with an overlay of several concepts from Chapter 11. The undeniable implication is that the presumption of dismissal upon the death of a debtor is just as applicable in a Chapter 12 case as it is in a case under the other two chapters.