**In re Joseph Eugene WILLS, Debtor.**

**Joseph Eugene WILLS, Plaintiff,**

**v.**

**THE HERITAGE BANK, Defendant.**

**Bankruptcy No. 89–11374 (MVB).**
**Adversary No. 95–1080.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

July 22, 1998.

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

## MEMORANDUM OPINION

The parties call upon this Court to determine whether to grant plaintiff's motion for substitution and parties' cross motions for partial summary judgment. After hearing counsels' arguments, the Court took these matters under advisement. For the following reasons, we conclude plaintiff's claims survive his death and defendant violated the automatic stay on two counts. Accordingly, we grant plaintiff's motion for substitution and motion for partial summary judgement on Counts II and III of his complaint for actual damages, including costs and attorneys' fees pursuant to 11 U.S.C. § 362(h).

The Court possesses jurisdiction over the parties and subject matter of this core proceeding pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A), (b)(2)(E), (b)(2)(F), (b)(2)(H), (b)(2)(O) and 1334(b). Venue is proper by 28 U.S.C. § 1409(a).

Debtor Joseph Eugene Wills ("plaintiff") filed a Chapter 11 bankruptcy petition on July 10, 1989.[1] The Heritage Bank ("defendant") timely filed a proof of claim in plain-

---

1. Previous to the bankruptcy, Arlington County Circuit Court appointed conservators to plain-tiff's estate to manage his affairs.

tiff's bankruptcy proceeding based on a $450,000 promissory note secured by 87,050 shares of stock in Independence Federal Savings Bank ("Independent Federal") and 175,000 shares of stock in Systems Impact, Inc. ("Systems Impact").

On December 5, 1989, defendant obtained a lift-stay order permitting it to sell plaintiff's Independent Federal shares. Defendant held these shares for 15 months before selling them on March 19, 1991. Defendant properly reduced its claim by the $108,812.50 received from the sale. Also, during the time between January through November 1990, defendant continued to send invoices seeking interest payment on the promissory note, and received plaintiff's payments totaling $73,381.85. Defendant did not subtract this amount from the principal due by plaintiff under the note.

The Court appointed Raymond Yancey as Chapter 11 trustee on January 10, 1992. Several months later on November 3, 1992, the Court confirmed plaintiff's reorganization plan. Defendant, as a class 11 unsecured creditor under the plan for $341,187.50, was to receive a pro-rata interest in plaintiff's limited partnership and cash distribution of 84% of its claims. In accordance with the plan, trustee transferred the property interest and paid defendant $274,788.00 of the $286,597.50 owed.

On February 9, 1993, after the confirmation, but before the plan's effective date of March 31, 1993, defendant sold plaintiff's Systems Impact shares for $35,000. Defendant did not seek relief from the stay for this sale, nor did it reduce its claim by this amount. On August 7, 1995, four months after plaintiff filed his adversary proceeding, this Court entered a final decree in the underlying bankruptcy proceeding. Plaintiff died on January 25, 1996.

Plaintiff, and trustee through his endorsement, filed a four-count complaint initiating this adversary proceeding on March 13, 1995. Count I asserts that defendant waived the lift-stay order by waiting to sell the Independent Federal shares, neglected to give plaintiff notice of the sale required by state law and failed to sell the shares at a commercially reasonable rate. Count II accuses defendant of selling the Systems Impact shares in violation of the automatic stay, without notice and for less than a commercially reasonable price. Count III states that in violating the stay by sending post-petition invoices for interest due on the promissory note, plaintiff's payment resulted in an overpayment to defendant under the plan. Alternatively, Count IV seeks to recover all plan payments under a theory of mistake.

The issues to be determined are plaintiff's motion for substitution of B.B. Wills as party plaintiff, plaintiff's motion for partial summary judgment on Counts II through IV and defendant's cross-motion for partial summary judgment on Counts III and IV.[2] In conjunction with these Counts, plaintiff seeks compensation for the $35,000 worth of Systems Impact stock, punitive damages of $105,000, a return of the $73,381.85 received by defendant in post-petition interest payments, interest, costs and attorneys' fees. In the alternative, plaintiff asks the Court to refund the payments trustee made to defendant under the plan.[3]

Plaintiff filed a motion to substitute plaintiff's son and executor, B.B. Wills, as party plaintiff due to plaintiff-debtor's death. Bankruptcy Rule 7025(a)(1) incorporates by reference Federal Rule of Civil Procedure Rule 25 dealing with the substitution of parties upon death, which states:

Death

If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5

---

**2.** Originally, defendant drafted its cross motion for partial summary judgment to include Count I. Defendant withdrew this part of the motion. As a result, only Counts II through IV remain before the Court.

**3.** The adversary proceeding comes again before this Court after the District Court reversed our decision dismissing the case for lack of subject matter jurisdiction.

and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

FED.R.BANKR.P. 7025(a)(1).

■ Rule 7025 therefore permits substitution of the successor or representative of a deceased debtor, so long as the claim survives debtor's death. *Hawkins v. Eads (In re Eads)*, 135 B.R. 380, 384 (Bankr.E.D.Cal. 1991).

■ As a question of substance, courts must look at each cause of action to determine whether a claim abates. *Id.* at 384. As a rule, federal law governs federal law claims, and state law governs state law claims. *Eads*, 135 B.R. at 385; 7C C. WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE §§ 1952 & 1954 (1991). Thus, first we should look to the statute creating the cause of action in search of the legislature's intent. If the statute fails to settle the matter, then we must turn to common law for guidance. *Eads*, 135 B.R. at 385.

■ The analysis of an action's survival arising under the Bankruptcy Code begins with the rule that debtor's death may abate cases under Chapters 11, 12 and 13, unless further administration remains possible and in the parties' best interests. FED. R.BANKR.P. 1016.[4] In the case at bar, plaintiff's death does nothing to complicate or interfere with the case's administration as to make it impossible. The Chapter 11 trustee has already administered the estate's assets, and the Court has closed the underlying bankruptcy case. Additionally, the successful administration of plaintiff's plan never depended upon plaintiff's continued participation. *See e.g., Erickson*, 183 B.R. at 193–94 (court denied debtor's motion for substitution, as his plan depended on income generated from debtor's business). Furthermore, it remains in the parties' best interests to continue with the claims in the adversary proceeding to ascertain that creditors received the amounts due to each as agreed to under the plan.

■ Under the federal Bankruptcy Code, the Court can resolve the effect of a debtor's death on recoupment of pre- and post-petition payments from the Code's terms. *See Eads*, 135 B.R. at 386. A corollary to the power to continue the posthumous administration of any bankruptcy case is the power to exercise all of the avoiding powers authorized by the Code. *Id.* These powers remain integral to case administration. *Id.* This would include claims dealing with violations of the automatic stay. The ability to pursue such claims in an adversary proceeding is necessary to effectively administer the case. *Id.*

■ Plaintiff also claims punitive damages under 11 U.S.C. § 362(h) in conjunction with defendant's alleged violation of the automatic stay. 11 U.S.C. § 362(h). Federal common law states that causes of action based on "penal" statutes abate, while those based on "remedial" statutes survive. *Schreiber v.*

---

4. Bankruptcy Rule 1016 states:
 If a reorganization, family farmer's debt adjustment, or individual's debt adjustment case is pending under chapter 11, chapter 12, or chapter 13, the case may be dismissed; or if further administration is possible and in the best interest of the parties, the case may proceed and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred.
 FED.R.BANKR.P. 1016.
 Defendant cites the Advisory Committee Notes to this rule to support the proposition that in Chapter 11 reorganization and Chapter 13 individual debt adjustment cases, a likelihood exists that the court will dismiss the case. *See In re Erickson*,

183 B.R. 189, 195 (Bankr.D.Minn.1995). Since under § 1121(c) any party in interest may file a reorganization plan, it is conceivable that the trustee could continue to administer the estate notwithstanding debtor's death or insanity. 9 COLLIER ON BANKRUPTCY ¶ 1016.03 (Lawrence P. King, et al., eds., 15th ed. rev.1997); *see* 11 U.S.C. § 1121(c). Rule 1016 gives courts discretion in determining whether to do so under the circumstances of a particular case. *In re Gridley*, 131 B.R. 447, 451 (Bankr.D.S.D.1991) (stating that unlike Chapter 7 cases, the Code gives courts discretion in deciding whether to continue a bankruptcy case after a Chapter 11 or Chapter 13 debtor has died).

*Sharpless,* 110 U.S. 76, 80, 3 S.Ct. 423, 28 L.Ed. 65 (1884). The modern trend favors survival of a party's claims. *Eads,* 135 B.R. at 385.

Relevant factors in this determination include whether the statute's purpose redresses individual wrongs or more general wrongs to the public, whether recovery under the statute runs to the harmed person and whether the statute authorizes a recovery proportionate to the injury. *Huntington v. Attrill,* 146 U.S. 657, 666–67, 13 S.Ct. 224, 36 L.Ed. 1123 (1892); *Murphy v. Household Finance Corp.,* 560 F.2d 206, 209 (6th Cir. 1977); *First Nat'l Bank & Trust Co. v. Flatau (In re Wood),* 643 F.2d 188, 191 (5th Cir.); *Smith v. Dep't of Human Servs.,* 876 F.2d 832, 835 (10th Cir.1989). Subsection 362(h) specifically and proportionately redresses personal injuries resulting from violations of the automatic stay. 11 U.S.C. § 362(h); *See* 3 COLLIER ON BANKRUPTCY ¶ 362.11[3] (Lawrence P. King et al., eds., 15th ed. rev.1997); *Pettitt v. Baker,* 876 F.2d 456, 457–58 (5th Cir.1989).

The *Eads* court reviewed a claim for punitive damages under § 362(h). The court stated that though punitive damages provisions sound "penal", they differ from damages available in common law actions. Such damages under the Code are not unlike antitrust and patent treble damages, civil tax fraud penalties, securities fraud statutory damages and Truth in Lending Act statutory damages, all of which survive a plaintiff's death. *Eads,* 135 B.R. at 386; *Rau v. Comm'r of Internal Revenue (In re Rau),* 301 F.2d 51 (9th Cir.1962); *Porter v. Household Fin. Corp.,* 46 Ohio Misc. 53, 385 F.Supp. 336 (S.D.Ohio 1974); *Flatau,* 643 F.2d at 191. These statutory provisions both serve to compensate the injured party and deter similar actions by others. *Eads,* 135 B.R. at 387.

Likewise, we find plaintiff's § 362(h) punitive damages claim does not abate under the "penal"-"remedial" dichotomy. As in § 362(h), this statutory provision compensates those other losses rationally related to violating the stay, which remain difficult to quantify. *Id.* In appropriate circumstances, Congress has permitted a punitive damages award to encompass such losses, in addition to sums for deterrence purposes. *Id.*

Under Congress's express intention regarding the effect of debtor's death on bankruptcy proceedings, we find that the claims before the Court survive plaintiff's death. Accordingly, we grant plaintiff's motion to substitute B.B. Wills as party plaintiff. As successor to his father's interests, Mr. Wills will step into his predecessor's shoes as if no change has occurred. *Hage v. Joseph (In re Joseph),* 121 B.R. 679, 683 (Bankr.N.D.N.Y.1990).[5]

Plaintiff claims defendant willfully violated the § 362 stay by selling the Systems Impact shares prior to the Chapter 11 plan's effective date, which entitles him to summary judgment on Count II of his complaint.[6] Plaintiff asserts defendant's behavior not only requires this Court to award actual damages, costs and attorneys fees, but also constitutes the "appropriate circumstances" as to warrant punitive damages under § 362(h), which states:

---

**5.** Count IV of plaintiff's complaint, in the alternative, seeks relief under a theory of mistake. We decline to address the survival of this claim for the reasons that follow, as it is not relevant to the adjudication of this case.

**6.** This case is unusual in that almost five months separated the plan's confirmation date from its effective date. *See Dep't of the Air Force v. Carolina Parachute Corp.,* 907 F.2d 1469, 1474 (4th Cir.1990). Under the Second Modified Plan of Reorganization and Disclosure Statement of Trustee, Debtor and Official Committee of Unsecured Creditors, all debtor's bankruptcy estate re-vested in the debtor, the plan became operative and distribution commenced on the effective date. *See In re H. White Constr. Co.,* 92 B.R. 656, 658 (Bankr.W.D.La.1998) (confirmation of a plan vests all of the estate in debtor, unless the plan provides otherwise); *In re Potomac Iron Works, Inc.,* 217 B.R. 170, 172 (Bankr.D.Md.1997). Therefore, the effective date became the critical date under this Chapter 11 plan, discharging debtor from any debt arising before the petition and rendering the automatic stay ineffective under § 362(c)(2)(C). 11 U.S.C. § 1141(a); *General Elec. Credit Corp. v. Nardulli & Sons Co. (In re Nardulli & Sons Co.),* 66 B.R. 871, 874–875 (Bankr.W.D.Pa.1986), *aff'd,* 836 F.2d 184 (3d Cir.1988); *see Security Bank v. Neiman (In re Brown),* 1 F.3d 687, 691 (8th Cir.1993).

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h).

■ A party may knowingly violate the stay, either in the erroneous belief that its action is permitted or in direct disregard of the stay. 3 COLLIER ON BANKRUPTCY ¶ 362.11 (Lawrence P. King, et al., eds., 15th ed. rev.1997); *United States v. Bulson (In re Bulson)*, 117 B.R. 537, 539 (9th Cir. BAP 1990), *aff'd*, 974 F.2d 1341 (1992) (mistaken belief that Chapter 13 case had been closed); *In re Mullarkey*, 81 B.R. 280, 284 (Bankr. D.N.J.1987) (mistaken belief that property no longer constituted property of the estate); *In re Baker*, 183 B.R. 30, 32–33 (Bankr.D.R.I. 1995) (mistaken belief that court had granted discharge).

■ Defendant's arguments, which attempt to negate its willfulness, are to no avail. Under the law, to constitute a willful act, the creditor must have acted intentionally and with knowledge of the automatic stay. *Citizens Bank of Md. v. Strumpf (In re Strumpf)*, 37 F.3d 155, 159 (4th Cir.1994), *rev'd on other grounds*, 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995); *see Budget Serv. Co. v. Better Homes of Va.*, 804 F.2d 289, 292–93 (4th Cir.1986). Defendant knew of the automatic stay, previously asking this Court for relief from the stay to sell the Independent Federal shares. Defendant also clearly intended to act. Defendant

states it believed at the time of the sale it received a good price for the Systems Impact shares, especially given the soft market for the shares. Defendant's mistaken belief that its actions did not require court approval cannot be a factor in the Court's analysis. *See, e.g., Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 227 (9th Cir.1989); *Pettitt*, 876 F.2d at 456.[7]

■ Though defendant's claimed innocent state of mind does not affect the award of compensatory damages, it could with the determination of whether to award punitive damages. *See, e.g., In re Hiers*, 76 B.R. 640, 642–43 (Bankr.E.D.Tenn.1987). The Code under § 362(h) permits the court to award punitive damages in "appropriate circumstances". The circumstances in this case are not appropriate for such a determination in a motion for summary judgment, as punitive damage awards require egregious factual circumstances. *In re Newell*, 117 B.R. 323, 325 (Bankr.S.D.Ohio 1990); *Mullarkey*, 81 B.R. at 284–85; *Promower, Inc. v. Scuderi (In re Promower, Inc.)*, 74 B.R. 49 (D.Md.1987); *Aponte v. Aungst (In re Aponte)*, 82 B.R. 738, 745 (Bankr.E.D.Pa.1988). We cannot, as a matter of law, say they exist in this case.[8]

Plaintiff's Count III deals with the $73,-381.85 paid to defendant for interest on the promissory note.[9] Plaintiff tries to avoid § 549(d)'s two-year statute of limitation by pleading generally that the interest payments made upon defendant's demand resulted in an overpayment to defendant in violation of the stay.[10]

---

**7.** Any discussion defendant had with the trustee, trustee's counsel, debtor or debtor's counsel does not affect the fact that only this Court had authority to grant creditors relief from the stay. *Cathey v. Johns–Manville Sales Corp.*, 711 F.2d 60, 62–63 (6th Cir.1983); *see* 11 U.S.C. § 362(d).

**8.** This remains true despite plaintiff's claim of defendant's intentional disregard for the automatic stay. *Budget Serv.*, 804 F.2d at 292–93 (court found ample evidence in the record to support defendant's spiteful and intentional repossession of debtor's property); *See Baker*, 183 B.R. at 32–33 (imposition of punitive damages for failure to adequately investigate whether stay was still in effect). Relevant factors to consider include the degree of contempt shown for adherence to the law, whether violation is an isolated occurrence and defendant's capacity to pay.

*Newell*, 117 B.R. at 324–25. These factors demonstrate the fact-intensive analysis required by § 362(h).

**9.** Count IV also deals with this issue; however, plaintiff pled it in the alternative to Count III. The following discussion renders Count IV moot. Accordingly, we decline to discuss the issues raised in, and in defense of, this count.

**10.** 11 U.S.C. § 549(a) and (d) state:

Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

made after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

■ Defendant has overlooked the relationship between § 549 and § 362, which has no statute of limitation. *Martin–Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575, 577–78 (7th Cir.1989); *Koffman v. Osteoimplant Tech., Inc.*, 182 B.R. 115, 124 (D.Md.1995); *but see Michaels v. National Bank of Sussex County (In re E–Tron Corp.)*, 141 B.R. 49, 54–55 (Bankr.D.N.J. 1992) (transfers in violation of automatic stay still subject to § 549(d)'s statute of limitation). We find that where a creditor acts in direct violation of the stay, it may not seek refuge behind § 549(d) when an injured party eventually calls upon it to account for its misconduct. *Warsco v. Schaller Trucking Corp. (In re R & L Cartage & Sons, Inc.)*, 118 B.R. 646, 651 (Bankr.N.D.Ind.1990); *Garcia v. Phoenix Bd. Of Indem. Co. (In re Garcia)*, 109 B.R. 335, 339 (N.D.Ill.1989); *see also Sapir v. Hudson Realty Co. (In re Rosalind Gardens Assoc.)*, 157 B.R. 75, 82 (Bankr.S.D.N.Y.1993) (court stated trustee could have argued § 549(d) statute of limitations did not limit the ability to recover property transferred in violation of § 362).

■ Section 549 covers post-petition transfers not prohibited, but not authorized

(B) that is not authorized under this title or by the court.
(d) An action or proceeding under this section may not be commenced after the earlier of—
(1) two years after the date of the transfer sought to be avoided; or the time the case is closed or dismissed.
11 U.S.C. § 549(a) and (d).

**11.** An overlap may occur between these two subsections. This Court has previously recognized such an overlap. *See In re Bob Grissett Golf Shoppes, Inc.*, 50 B.R. 598, 607 (Bankr.E.D.Va. 1985) (Bostetter, J.) (agreement between debtor in possession and landlord for payment of additional money to be applied to unpaid pre-petition rent obligations violated §§ 362(a), 549(a) and 502(d)).

**12.** Any discussion defendant may have had with the trustee, trustee's counsel, debtor or debtor's counsel cannot affect the Court's analysis. Debtor may not waive the automatic stay's protection. *Commerzanstalt v. Telewide Sys., Inc.*, 790 F.2d 206, 206–07 (2d Cir.1986); *see Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir.1991). Only the bankruptcy court with jurisdiction over debtor's case has authority to grant creditors relief from the stay. *Cathey*, 711 F.2d at 62–63; *see* 11 U.S.C. § 362(d).

by the Bankruptcy Code, where in most circumstances debtor willingly participates. *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 573–74 (9th Cir.1992); *Knopfler v. Glidden Co. (In re Germansen Decorating, Inc.)*, 149 B.R. 517, 520 (Bankr. N.D.Ill.1992); *Garcia*, 109 B.R. at 339. Subsection 362(a) enumerates specific acts the Code prohibits while the stay remains in effect, regardless of debtor's participation.[11] 11 U.S.C. § 362(a). Defendant's actions clearly fall into this latter category.[12] As such, § 549(d)'s limitation period does not apply. *R & L Cartage*, 118 B.R. at 651.[13]

Plaintiff's Exhibit E sets forth defendant's loan payment schedule, including the checks tendered in interest payments. Of the $31,950.00 paid in the first check on January 18, 1990, approximately $6,000 covered pre-petition interest. The remainder of the $73,381.85 paid between January through November 1990, represents interest that accrued during the bankruptcy proceeding.

■ To the extent defendant collected payments of pre-petition interest on the $450,000 promissory note, defendant violated § 362(a)(6). This subsection stays "any act

**13.** The Fourth Circuit has yet to rule on whether acts in violation of the automatic stay remain voidable or void. *Winters v. George Mason Bank*, 94 F.3d 130, 136 n. 5 (4th Cir.1996). A split exists within this circuit, as well as among the circuits. *See Khozai v. Resolution Trust Corp.*, 177 B.R. 524, 526–27 (E.D.Va.1995) (district court upheld this Court's granting of retroactive relief from the stay as actions in violation of the stay remain voidable.); *cf. Anglemyer v. United States*, 115 B.R. 510, 514 (D.Md.1990); *Atkins v. Atlantic Ambulance Assocs., Inc. (In re Atlantic Ambulance Associates, Inc.)*, 166 B.R. 613, 615 (Bankr.E.D.Va.1994); *In re Lampkin*, 116 B.R. 450, 453 (Bankr.D.Md.1990); *Maryland Nat'l Mortgage Corp. v. Burns (In re Burns)*, 112 B.R. 763, 765 (Bankr.E.D.Va.1990); *In re Miller*, 10 B.R. 778, 780 (Bankr.D.Md.1981), aff'd, 22 B.R. 479 (D.Md.1982). To the extent defendant's actions are voidable, we decline to grant retroactive relief from the stay, as defendant's unsecured status did not entitle it to receive monies for post-petition interest on its note. *See, Khozai*, 177 B.R. at 527: *see also United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 372–73, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C § 362(a)(6). Congress intended to prevent creditors from harassing a debtor by attempting to collect pre-petition debts. *Strumpf,* 516 U.S. at 21, 116 S.Ct. 286; *In re Smith,* 185 B.R. 871, 872–73 (Bankr.M.D.Fla. 1994); *In re Draughon Training Inst., Inc.,* 119 B.R. 921, 925 (Bankr.W.D.La.1990). The defendant's action in contacting plaintiff's conservators and sending invoices post-petition are exactly the acts that Congress intended to prevent. *See* H.R.Rep. No. 95–595, at 340–42 (1977); S.Rep. No. 95–989 at 54–55 (1978); *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840 & 6296–97.

Section 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3); *Strumpf,* 516 U.S. at 21, 116 S.Ct. 286. Defendant violated § 362(a)(3) by mailing invoices to debtor's conservator requesting such payments. It sought to receive payments in violation of the stay and at the potential expense to other creditors prior to confirmation of plaintiff's plan.[14] *Orient River Invs., Inc. v. Equibank (In re Orient Invs., Inc.),* 105 B.R. 790, 797 (Bankr.E.D.Pa. 1989) (court has considered the fact that creditor retained money which it had no conceivable right to in punitive damages award); *United States v. Bulson (In re Bulson),* 117 B.R. 537, 539 (9th Cir. BAP 1990) (mailing of collection notices violates stay); *Newell,* 117 B.R. at 324–25 (computerized billing procedures violated stay).

Nothing in either § 362(a)(3) or (6) suggests that plaintiff's bankruptcy only stays coercive non-voluntary acts to take property of the estate or collect a pre-petition debt. *See, e.g.,* § 362(a)(1), (2) and (8); *Calder v. Job (In re Calder),* 907 F.2d 953, 956 (10th Cir.1990); *Smith v. First America Bank (In re Smith),* 876 F.2d 524, 526 (6th Cir.1989); *Germansen,* 149 B.R. at 521; *In re BNT Terminals,* 125 B.R. 963, 973 (Bankr.N.D.Ill. 1990). Whether plaintiff agreed to make these payments or disclosed the fact that his conservators had made the payments is of no consequence. *Germansen,* 149 B.R. at 521–22 ("[i]t makes no difference whether creditor gets [an] advantage as a result of a voluntary or involuntary transfer").

Though the *Germansen* court found violations of the stay void, the reasoning remains the same for this Court in refusing to condone defendant's actions:

> permitting [the creditor] to retain these funds as it would have this court do would allow [the creditor] to receive a windfall at the expense of the creditors of this estate and the integrity of the bankruptcy system. This court will not sit idle and permit debtors to waive willy, nilly the automatic stay so that certain creditors may be preferred with impunity and the estate dismembered without reference to the Code.

*Germansen,* 149 B.R. at 521 *(citing BNT,* 125 B.R. at 973).

 At the time defendant received these interest payments, the Court had yet to confirm a Chapter 11 plan.[15] To give legal

**14.** Ordinarily, the Code does not allow a creditor's claim for interest accruing on their debts during bankruptcy proceedings. 11 U.S.C. § 506(b)(2); *Timbers,* 484 U.S. 365, 372–73, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). As an exception to this rule, an oversecured creditor, but not an undersecured one, may receive post-petition interest as a part of its claim at the time of the plan's confirmation, i.e., near the bankruptcy's conclusion. *Id.; Orix Credit Alliance, Inc. v. Delta Resources, Inc. (In re Delta Resources, Inc.),* 54 F.3d 722, 729–730 (11th Cir.1995) (determination of creditor's secured status occurs at or near a bankruptcy's conclusion). Not only did defendant collect interest from plaintiff shortly after bankruptcy, defendant as an undersecured creditor was never entitled to receive such interest payments. As it turned out, plaintiff's plan

terminated defendant's security interest in the Systems Impact shares and declared defendant's claims as unsecured. Defendant was therefore only entitled to the treatment accorded to its class of creditors under the plan. *See In re Penrod,* 50 F.3d 459, 462 (7th Cir.1995). Even if defendant did retain its secured status, creditors taking post-petition collection actions bear the burden of obtaining relief from the stay. *Schwartz,* 954 F.2d at 572; *see Williams v. United Inv. Corp. (In re Williams),* 124 B.R. 311, 317–18 (Bankr.C.D.Cal.1991). We cannot condone defendant's disregard of bankruptcy procedures.

**15.** Defendant correctly states that a confirmed plan binds both creditors and debtors alike. *See* 11 U.S.C. § 1141(a); *In re St. Louis Freight*

effect to defendant's actions would allow creditors to improperly dismember an estate at random. *See In re Timbers of Inwood Forest Associates, Ltd.,* 793 F.2d 1380, 1387 (5th Cir.1986) *aff'd, United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). The Court refuses to condone actions inconsistent with Congress's rationale in providing for the automatic stay. *See* H.R.Rep. No. 95–595, at 340–42 (1977); S.Rep. No. 95–989 at 54–55 (1978); *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840 & 6296–97.

We find that plaintiff's claims did not abate upon his death, and that defendant willfully violated the automatic stay by selling plaintiff's Systems Impact shares without seeking relief of the stay and by collecting post-petition interest payments. For the foregoing reasons, the Court grants plaintiff's motion for substitution and motion for partial summary judgment on Counts II and III of his complaint for actual damages, including costs and attorneys' fees.[16] The Court will enter a separate order consistent with this opinion.

---

*Lines, Inc.,* 45 B.R. 546, 551 (Bankr.E.D.Mich. 1984). Confirmed plans possess a binding contractual nature on questions pertaining to the plan itself. *Id.; see Stoll v. Gottlieb,* 305 U.S. 165, 172, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *Harstad v. First Amer. Bank,* 39 F.3d 898, 901 (8th Cir.1994); *see In Matter of Dooley,* 116 B.R. 573, 578 (Bankr.S.D.Ohio 1991); *Hoffman v. First Nat'l Bank,* 99 B.R. 929, 936 (N.D.Iowa 1989); *Galerie Des Monnaies,* 55 B.R. 253, 256–57. However, the plan and confirmation order limit the scope of the confirmed plan's preclusive effect. *Maxwell Communication Corp. v. Societe Generale (In re Maxwell Communication Corp.),* 93 F.3d 1036, 1044–45 (2d Cir.1996).

**16.** Upon payment of plaintiff's claims, defendant remains entitled to receive the amounts still due under plaintiff's Chapter 11 plan of approximately $11,810. We decline to award plaintiff pre-judgment interest. *See generally Coliseum Cartage Co. v. Rubbermaid Statesville, Inc.,* 975 F.2d 1022, 1026 (4th Cir.1992) (it remains within the court's discretion to award pre-judgment interest); *Advanced Marine Enter., Inc. v. PRC, Inc.,* 501 S.E.2d 148, 159–60 (Va.1991) (pre-judgment interest generally not permitted on unliquidated damages).