In re Robert J. TAFT t/a Oak Ridge Timber Co., Debtor.

Charles A. Szybist, Esquire, Trustee in Bankruptcy, Plaintiff,

v.

McKean County Tax Claim Bureau and Young Family Interests, Inc., Defendants.

Bankruptcy No. 5–96–01995.
Adversary No. 5–98–00321A.

United States Bankruptcy Court,
M.D. Pennsylvania,
Wilkes-Barre Division.

Jan. 4, 2001.

Charles A. Szybist, Williamsport, PA, for plaintiff.

Raymond W. Bulson, Bulson & Lindhome, Portville, NY, for Young Family Interests, Inc.

Jay Paul Kahle, Badford, PA, Solicitor for McKean County.

## OPINION [1]

JOHN J. THOMAS, Bankruptcy Judge.

In this adversary proceeding, the Trustee, Charles A. Szybist, Esquire, requests the Court order the Defendant, Young Family Interests, Inc., ("YFI"), to turnover and reconvey certain property to the Trustee and to find the tax sale conducted after the date of the filing of the bankruptcy was in violation of the automatic stay thereby rendering void the sale from the McKean County Tax Claim Bureau to YFI.

The facts are as follows: On or about November 8, 1994, Robert W. Hollerman and Jesse E. Hollerman conveyed to Robert J. Taft, ("Debtor"), certain lands approximating 25 acres in the Township of Keating, County of McKean, Commonwealth of Pennsylvania, in the amount of $35,000.00. All parties have acknowledged the deed was unrecorded on the date of the filing of the bankruptcy petition. The Debtor initially filed a Chapter 13 bankruptcy petition on September 6, 1996 which was thereafter converted to Chapter 7 on May 26, 1998. While the deed was unrecorded, the assessment card in the McKean County Assessment Office listed the names of both the Hollermans and Robert J. Taft. On September 14, 1998, the Tax Claim Bureau sold the real estate to

1. Drafted with the assistance of Richard P. Rogers, Law Clerk.

Defendant, YFI, at a tax sale scheduled due to unpaid real estate taxes. Subsequent to the tax sale and the filing of the instant adversary, YFI conveyed mineral rights to the 25 acres to Messer Oil. Thereafter, on July 22, 1999, the Trustee abandoned the property.

The Tax Claim Bureau admitted it knew, prior to the sale, of the allegations of both Taft and the Trustee asserting there was an unrecorded deed from the Hollermans to Taft. (See Tax Claim Bureau Answer at ¶ 12.) YFI answered it knew of "no bona fide contention" but it did have knowledge of a "third-hand unsubstantiated rumor" there was an unrecorded deed. (See YFI Answer at ¶ 13.) "The Tax Claim Bureau Director told Defendant shortly before tax sale that Plaintiff contended that debtor Robert J. Taft claimed that he had 'some interest' in the subject property." (See YFI Answer at ¶ 13.) The Tax Claim Bureau admitted the allegations of paragraph 15 of the Complaint: the Trustee had a telephone conversation with the director of the Tax Claim Bureau on September 9, 1998 advising of the estate's position that the Debtor had an unrecorded deed in his name to the land and warning that going forward with the tax sale would violate the automatic stay.

Furthermore, by letter dated August 1, 1998, the Debtor informed the Tax Claim Bureau he filed bankruptcy on September 16, 1996 and the upset sale planned for the 14th of September would be a violation of the automatic stay because he owned the property by unrecorded deed. (See Exhibit T–1.)

Neither a representative of the Tax Claim Bureau nor a lawyer on its behalf participated at the hearing. Under cross examination, the Debtor testified that, while the deed was not recorded, the assessment card in the Tax Claim Bureau

bore his name. (See Transcript of 11/4/99 at p. 39–40.) John Frederick Young, Vice President and Secretary of YFI, testified that the Director of the Tax Claim Bureau, Nancy Ollinger, told him of communications she had with both the Debtor and the Trustee, explaining of a claim of an unrecorded deed to the property and that Mr. Taft was also in bankruptcy. (See Transcript of 11/4/99 at p. 45.) He further testified that Ms. Ollinger had communicated to the Trustee that if the taxes were paid or she was presented with "some sort of a deed or some sort of an instrument that shows that he [Taft] does, indeed, have a claim that would thus make me [Ollinger] stop the sale." (Transcript of 11/4/99 at p. 46.) Mr. Young testified of his conversations with Ms. Ollinger and his own attempts to check the records at the courthouse prior to the September 14, 1998 upset sale. Mr. Young felt both he and Ms. Ollinger had done proper investigations and did all due diligence and inquiries called for particularly in light of Mr. Young's knowledge of Mr. Taft's prior convictions concerning fraud charges against him stemming from his forgery of certain real estate deeds. Under cross examination by the Debtor, Mr. Young testified he did not contact the Hollermans to determine whether Mr. Taft, indeed, owned the property. (Transcript of 11/4/99 at p. 56.)

As indicated, the Tax Claim Bureau did not put forth a defense at trial. It did, in its answer, admit it was put on notice the Debtor had claimed an ownership interest in the property subject to the tax sale. YFI, however, argues it was not aware the Tax Claim Bureau was violating the automatic stay and, thus, it was a good faith purchaser. The argument continues that 11 U.S.C. § 549(c) provides an exception to post-petition sales that otherwise would be in violation of the automatic stay. Furthermore, because the Debtor did not rec-

ord the deed in accordance with 21 P.S. § 444, he did not own the real estate at the time of the filing of the petition. Relying on the bankruptcy case of *In re Capital Center Equities*, 137 B.R. 600 (Bankr. E.D.Pa.1992), YFI reasons if a deed is not recorded within the time provisions provided by 21 P.S. § 444 and 21 P.S. § 351, the deed is void as to any subsequent bona fide purchaser. Then, relying on certain Pennsylvania case law, YFI argues it is a bona fide purchaser who purchased without adequate notice of the claimed interest of the Debtor because the purchaser had neither actual nor constructive notice of the Debtor's interest in the property. YFI does not dispute the Debtor has an interest in the property, but rather the legal status of the unrecorded interest as of the date of the filing of the bankruptcy.

I must consider several issues involving both state law and bankruptcy law to resolve the instant dispute. First, I must determine whether the Debtor or the estate had an interest in the real estate at the time of the filing of the bankruptcy.

█ None of the parties questioned the authenticity of the copy of the Deed submitted into evidence and there was no challenge made to any of the signatures appearing thereon. The only objection made to the submission of the Deed was by YFI which argued, under 21 P.S. § 442, a deed which has remained unrecorded for a term of two years could not be submitted into evidence in any of the Courts of the Commonwealth. Section 442 reads, in its entirety, as follows:

§ 442. Deeds Not So Recorded, As Evidence

No such deed, which shall remain unrecorded as aforesaid, for the said term of two years, shall be permitted to be given in evidence in any of the courts of this commonwealth, unless proven or acknowledged according to the act to which this is a supplement, or unless proven in the manner in which other instruments of writing are proven, by subscribing witnesses or proof of handwriting, or unless, the actual possession of the land has accompanied the said deed.

21 P.S. § 442

█ Without resolving the issue as to whether a United States Bankruptcy Court qualifies as a Court of this Commonwealth, I have determined the Deed can be received in evidence because it was acknowledged by the seal of a notary and, therefore, is properly received under the terms of § 442. From this I make a finding that, on the date of the filing of the bankruptcy, the Debtor was the owner of the subject real estate. I further find the Trustee possessed this ownership interest pursuant to the provisions of the United States Bankruptcy Code. 11 U.S.C. § 541(a)(1).

As indicated earlier, the unrecorded transfer of property to Robert Taft was sufficient to vest in Taft and, thus, his bankruptcy estate, a property interest as the term is defined by 11 U.S.C. § 541. The issue now becomes whether the tax claim bureau violated Section 362 of the Bankruptcy Code.

█ The Code provides for an automatic stay of creditors claims on the debtor. 11 U.S.C. § 362(a)(1) states:

§ 362. Automatic stay

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

Section 362(a)(3) further states: ...

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

The conclusion is inescapable that the Tax Claim Bureau violated Section 362 of the Bankruptcy Code when they attempted to sell the property of Robert Taft to YFI. It is the impact of this violative conduct which now must be determined by this Court.

Courts throughout our country have generally considered violations of the automatic stay as either void[2], voidable[3], or invalid[4]. The distinctions between these terms are oftentimes blurred by the definitions attributed by the individual court reviewing them. Our Circuit has consistently described violations of the automatic stay as void. *Raymark Industries, Inc. v. Lai*, 973 F.2d 1125, 1132 (3d Cir.1992); *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir.1991); *In re Ward*, 837 F.2d 124, 126 (3d Cir.1988). The term void has a dictionary definition meaning "of no legal force or effect." Merriam–Webster's New Collegiate Dictionary 1302 (1979). Notwithstanding that definition, our Circuit has concluded, while violations of the automatic stay are void, they can be "annulled" under certain circumstances. *In re Siciliano*, 13 F.3d 748, 751 (3d Cir.1994).[5] One of those circumstances is set forth in Section 362(d). Under that section, the automatic stay can be annulled by the Bankruptcy Court thereby validating that which would otherwise be deemed to be invalid. [11 U.S.C. § 362(d)] In other circumstances, the court has utilized 11 U.S.C. § 549(c) as grounds to validate the otherwise invalid post-petition transfer of property. *In re Ward*, 837 F.2d 124, 126 (3d Cir.1988). In § 549 cases, the burden is on the party seeking to validate the conduct to show why the conduct in violation of the automatic stay should stand. Federal Rule of

---

**2.** *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 975 (1st Cir.1997); *In re 48th St. Steakhouse*, 835 F.2d 427, 431 (2d Cir.1987), cert. denied, 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988); *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581 (9th Cir.1993); *Ellis v. Consolidated Diesel Elec. Corp.*, 894 F.2d 371 (10th Cir.1990); *Borg–Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir.1982); *In re Vierkant*, 240 B.R. 317 (8th Cir. BAP 1999).

**3.** *Bronson v. United States*, 46 F.3d 1573 (Fed. Cir.1995) (2 to 1 decision); *Jones v. Garcia (In re Jones)*, 63 F.3d 411, 412 & n. 3 (5th Cir.1995), cert. denied, 517 U.S. 1167, 116 S.Ct. 1566, 134 L.Ed.2d 666 (1996).

**4.** *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir.1993).

**5.** Indeed, this ability to annul the automatic stay theretofore considered void, has led one court to view our Circuit's position as holding violations of the automatic stay are merely voidable in the Third Circuit. *Winters v. George Mason Bank*, 94 F.3d 130, 136 (4th Cir.1996). Arguably, there is some authority for this position. *Constitution Bank v. Tubbs*, 68 F.3d 685, 692 at n. 6 (3d Cir.1995) ("Generally, judicial actions and proceedings against the debtor are void ab initio absent relief from the stay. We have, however, recognized that section 362(d), which requires the bankruptcy court to grant relief from the stay under certain circumstances and permits such relief to be applied retroactively, would allow the bankruptcy court to grant annulment of a stay, *thereby making acts in violation of the stay voidable, rather than void ab initio*.") Emphasis added.

Bankruptcy Procedure 6001. 11 U.S.C. § 362(g) places the burden on the movant to show a lack of equity in cases regarding the automatic stay.

As alluded to earlier, YFI argues an exception to the § 362 stay is contained in § 549(c) of the Bankruptcy Code. The pertinent subsections of § 549 (Post–Petition Transactions) are subsections (a) and (c). Those subsections read as follows.

**Section 549. Postpetition transactions**

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

(c) The trustee may not avoid under subsection (a) of this section a transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to the interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

■ Section 549 is geared to protecting the estate against unauthorized, post-petition transfers by the debtor or by creditors seizing property in order to perfect their liens. *In re Schwartz*, 954 F.2d 569 (9th Cir.1992). *In re Glendenning*, 243 B.R. 629 (Bankr.E.D.Pa.2000). "The purpose of section 549 is to allow the trustee to avoid those post-petition transfers which deplete the estate while providing limited protection to transferees who deal with the debtor." 5 Lawrence P. King et al., Collier on Bankruptcy ¶ 549.06 at p. 549–11 (15th ed.1997).

■ 11 U.S.C. § 549(c)

Subsection (c) provides an exception to good faith purchasers who (1) are ignorant of the bankruptcy, (2) pay fair market value for the property, and (3) perfect their title under applicable law so as to defeat a subsequent bona fide purchaser before a notice or copy of the bankruptcy is filed with the appropriate authority.

*In re Ward*, 837 F.2d 124, 126 (3d Cir. 1988).

■ However, "[A]s an exception, subsection (c) must be strictly construed." *Id.* at 127.

■ Logically, the next question is whether YFI has met its burden of proof establishing an exception under 549(c) to a sale admittedly conducted in violation of the automatic stay under § 362 of the United States Bankruptcy Code. I find that it has not.

The tax sale is of no consequence unless either the taxing bureau, or the purchaser at the tax sale, convinces this Court that the automatic stay should be annulled under § 362(d) or the purchaser is a good faith purchaser for value under 11 U.S.C. § 549(c). Here, it is clear, that YFI has not asked to have the automatic stay annulled and therefore I need not consider that alternative. YFI argues it is a good faith purchaser for value under § 549(c).

I find as a matter of fact that, before the sale, both the Tax Claim Bureau and YFI had reason to believe the Debtor was in bankruptcy and the Debtor had an interest in the property in question. Therefore, I cannot find YFI is a good faith purchaser "without knowledge of the commencement of the case" under 11 U.S.C. § 549(c). Thus, the automatic stay of § 362 prevents the tax sale from effecting a transfer of the real estate as a method of collecting the tax obligations which encumber the Debtor's property. Moreover, the lack of good faith on the part of the purchaser prevents the application of any exception to the voidness doctrine discussed earlier. The sale being void, neither the taxing bureau nor the YFI have shown cause which would support an annulment of the automatic stay or a validation of the tax sale.

An Order will follow.