**In re AMERICAN LODGING, INC., Debtor.**

**R. David Boyer, Trustee, Plaintiff**

v.

**US Bank, Auditor of Allen County, Treasurer of Allen County, Allen County Indiana, Defendants.**

**Bankruptcy No. 06–12067.**
**Adversary No. 08–1009.**

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

Dec. 1, 2008.

R. David Boyer II, Boyer & Boyer, Fort Wayne, IN, for Plaintiff.

John E. Kolas, Hannon Kolas & Centers, Indianapolis, IN, for US Bank, Defendant.

Thomas A. Hardin, Ft. Wayne, IN, for Auditor of Allen County and Treasurer of Allen County, Defendants.

ROBERT E. GRANT, Bankruptcy Judge.

## DECISION

If real estate taxes remain unpaid long enough, the property will be offered for

sale by the county. The successful bidder at such a sale does not become the owner of the property, at least not immediately. Instead it obtains a lien upon or succeeds to the county's lien upon the real estate in question. The owner then has one year within which to redeem the property by paying the minimum bid, together with interest on the amount of the buyer's total bid.[1] In that event, the bidder's money is refunded to it, together with interest. If the property is not redeemed, the successful bidder has the opportunity to become its owner by filing a petition for deed; the bid price is used to satisfy the delinquent taxes and any overage is paid to the owner. Depending upon the bid in relation to the value of the property, this may allow the bidder to acquire the property for a bargain price. The only obstacle to the successful bidder's financial success is if it would, for one reason or another, be struck with buyer's remorse—say by bidding more than the property turned out to be worth. In that event, the county would be happy, because the delinquent taxes would be paid; the owner would be happy, because the property sold for more than it was worth; as for the successful bidder, unless it wants to lose its entire investment by not seeking title to the property (in which event the county keeps the surplus), it ends up being the owner of real estate that is worth less than what it paid for it. There is, however, a way the buyer might be able to mitigate its losses. Nothing under Indiana law limits the identity of the person who can redeem property from a tax sale. Anyone can do so. As a result, the successful bidder who is struck with buyer's remorse can pay the amount required to redeem the property from sale.

In that event, it gets a substantial portion of its money back. Although it will lose the amount of the minimum bid, that may be preferable to the alternative of ownership, and may simply be the risk one runs by searching for investment opportunities through tax sales. But, there is also another possibility which will allow the buyer to avoid any loss. If the tax sale is invalid, the buyer gets all of its money back. *See generally*, I.C. 6–1.1–24 et. seq., 6–1.1–25 et. seq.

This overview of Indiana tax sales provides the background for the events giving rise to this adversary proceeding, which asks the court to determine the validity of a tax sale conducted by the Allen County Treasurer. Prior to the date of the petition, the debtor was delinquent in its real estate taxes and its real estate was offered for sale on October 9, 2006. At this sale, the defendant, U.S. Bank as custodian for Plymouth Park Tax Services, LLC, was the successful buyer with the high bid of $900,000–$759,000 more than the required minimum. Almost one month after the sale, on November 10, 2006, the debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code, thereby giving rise to the automatic stay of § 362.[2] Some months later, on June 11, 2007, Allen County issued a notice to the debtor advising it of the tax sale, the deadline for redeeming the property, and the amount required to redeem. This notice is a prerequisite to the buyer's opportunity to obtain a deed to the property if it is not redeemed, *see*, I.C. 6–1.1–25–4.5, and so it also advised the debtor of the date after which the county could file a petition for issuance of a deed to the buyer.[3] For whatever reason, U.S. Bank was not inter-

---

1. A flat 10 or 15 percent interest is required on the minimum bid (which is equal to the delinquent taxes, penalties, interest and fees) depending upon when the property is redeemed; and interest accrues at the rate of 10 percent on any surplus. *See*, I.C. 6–1.1–25–2.

2. The case was subsequently converted to Chapter 7 on May 24, 2007.

3. Although these notices are usually issued by the buyer, the statute allows counties to establish a procedure by which they will take over

ested in becoming the property's owner. Instead, on the last available day, it redeemed the property by paying the required amount. It also filed a complaint with the Allen Circuit Court seeking a declaration that the tax sale was invalid. It claimed the notice concerning redemption that the County issued after the date of the petition violated the automatic stay and, therefore, the sale was void. The matter made its way into this court when the debtor's Chapter 7 trustee took the position that the state court action violated the automatic stay and U.S. Bank's subsequent motion for relief from the automatic stay was denied. In order to bring the issue to a head and determine who is entitled to the sale proceeds, the trustee initiated the present action seeking a declaration as to the validity of the tax sale and the proper distribution of the sale proceeds. The matter has been submitted to the court on the parties' stipulations of fact and the briefs of counsel.

US Bank is the one asserting that the tax sale was invalid and that it is entitled to 100 percent of the sale proceeds, along with the money it paid to redeem the property from an invalid sale. Its entire argument is based upon the proposition that acts taken in violation of the automatic stay are void. It points to the notice the Allen County Treasurer issued on June 11, 2007, after the date of the petition, and argues that the notice violated the automatic stay, is void, and that this also invalidates the tax sale, even though that sale occurred before the debtor's bankruptcy and before the automatic stay ever came into existence.

 It could very well be that the Bank's major premise—that actions taken in violation of the automatic stay are void—is not correct. The Seventh Circuit has never so held. Quite to the contrary,

it has acknowledged that actions taken in violation of the automatic stay are either void or voidable, but it has never been required to choose between those two positions, *see, Middle Tennessee News Co. v. Charnel of Cincinnati, Inc.,* 250 F.3d 1077, 1082 fn. 6 (7th Cir.2001) ("We have no occasion to ... forage into the debate among the circuits over whether such actions are void or merely voidable...."); *Matthews v. Rosene,* 739 F.2d 249, 251 (7th Cir.1984) (violations of the automatic stay are ordinarily void, however, the bankruptcy court must also be mindful of its equitable powers), and there is a significant distinction between them. An act which is completely void, or void ab initio, has no validity and can be challenged by anyone at any time. An act which is simply voidable, however, is valid unless and until it is undone at the behest of someone who has a legitimate interest in doing so. *See, Sikes v. Global Marine, Inc.,* 881 F.2d 176, 178 (5th Cir.1989).

 This case presents a very good example of why one might want to conclude that actions taken in violation of the automatic stay are only voidable, and not completely void. The purpose of the automatic stay is to protect the debtor, creditors and the bankruptcy estate, to preserve the status quo, prevent the estate from being dismembered, and thereby maximize the ultimate distribution to all creditors. H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), reprinted in (1978) U.S.Code Cong. & Ad. News 6296–97. Thus, it is characterized as a shield, not a sword. *Winters by and Through McMahon v. George Mason Bank,* 94 F.3d 130, 136 (4th Cir.1996); *In re Globe Inv. and Loan Co. Inc.,* 867 F.2d 556, 560 (9th Cir.1989). In this instance, however, U.S. Bank is attempting to use the automatic stay as a sword. More significantly, it is using that sword not to defend the rights

that responsibility and Allen County has done

so. I.C. 6–1.1–25–4.5; I.C. 6–1.1–25–4.7.

of the bankruptcy estate, but to diminish them. The debtor, the estate, and the trustee, all seem reasonably content with a distribution of the proceeds based upon the proposition that U.S. Bank properly redeemed the property.[4] It is only U.S. Bank that stands to gain by invalidating the sale. Despite the fact that the trustee, the estate, and the debtor are apparently content with a redemption-type outcome and are not complaining about any violations of the automatic stay, it is U.S. Bank which takes that position. Thus, the whole scenario seems to turn the automatic stay on its head, so that it can be used against the debtor, the estate and other creditors, and not for their benefit. Rather than allow the automatic stay to be so distorted, a far more appropriate result would be to conclude that actions taken in violation of the stay are voidable, instead of completely void, and can only be challenged by those who are actually protected by the automatic stay—the debtor, the trustee and the bankruptcy estate—not by anybody who has a mind to do so. *In re Brooks,* 871 F.2d 89, 90 (9th Cir.1989) ("Congress devised the stay to protect the debtor and creditors and to assure the orderly distribution of the estate. It did not intend to confer rights on other parties."). *See also, Matter of James Wilson & Assocs.,* 965 F.2d 160, 168 (7th Cir.1992) ("to have standing to invoke a statute, you must be one of the persons whom the statute is intended to protect.").

 Although this case certainly presents an appealing situation in which to fully consider the wisdom of concluding that actions taken in violation of the automatic stay are only voidable, and not void,

the court need not do so in order to resolve the issues it presents. Remember the sequence of events:

1. The tax sale;
2. The petition for relief under chapter 11 and the creation of the automatic stay;
3. Notice concerning redemption;
4. Redemption.

The action which is claimed to violate the automatic stay took place at step three—the issuance of the notice—yet the event which the Bank seeks to invalidate because of that action—the tax sale—took place at step one, on October 9, 2006, *before* the petition was ever filed. At no time does the Bank adequately explain how an action taken in violation of the automatic stay can void an otherwise proper act which took place before the stay ever came into existence. Rather than effectively advancing such an argument, the Bank simply, and stubbornly, maintains that actions taken in violation of the automatic stay are void, the post-sale redemption notice violated the automatic stay, and, therefore, the tax sale was void. The court has never understood the automatic stay to have a retroactive effect. To the contrary, it operates only prospectively. Only events taking place from and after the creation of the automatic stay (and subsequent events which may depend upon them) can be invalidated if they violate the automatic stay. Otherwise proper events that take place before the stay comes into existence remain valid.

So to resolve the matter at issue, we ask a simple question. Assuming that the notice of the redemption deadline violated the automatic stay,[5] what events chal-

---

4. The final lines of the trustee's brief contain a suggestion that the court should hold the redemption invalid and therefore distribute the sale proceeds as though there had been no redemption, yet the brief itself makes no serious argument on that issue, and so the court does not consider it.

5. Both the County and the trustee make an argument that the notice does not violate the automatic stay, but the court does not need to address it.

lenged here depend upon the validity of that notice? The answer is none. The notice is merely a prerequisite to the buyer's ability to obtain a deed in the event the property is not redeemed. I.C. 6–1.1–25–4.5. If the property had not been redeemed and the Bank was seeking a deed perhaps we would have something to talk about, but that is not the case. We are dealing with the consequences of the Bank's redemption, and redemption does not in any way depend upon the offending notice. The time within which redemption must occur is not determined by the date of the notice. It runs from the date of the sale, I.C. 6–1.1–25–4(a)(4), and can take place whether the notice is given or not. Thus, if the court held that the notice and all subsequent events that depended upon it were void, nothing would change, because there are no such subsequent events.

The Bank fails to recognize the possibility that the automatic stay might be violated and yet the violation could have absolutely no consequences. Its entire argument is based upon *Dempsey v. Auditor of Marion County*, 871 N.E.2d 1031 (Ind.Ct.App.2007), where the Indiana Court of Appeals held that the issuance of a tax deed was void, because it had been issued while the automatic stay was in effect. Therefore, title was quieted in the name of the debtor (one of the entities the automatic stay is designed to protect), rather than in the name of the tax sale buyer or its successor. That case has significant differences from the situation now before the court, differences which

seem to be lost upon the Bank. In the first instance, the one seeking relief from acts which violated the automatic stay was the debtor, one of the entities the stay is designed to protect,[6] and not someone else. Secondly, the actions that were held invalid took place after the automatic stay went into effect, not before.

In light of the foregoing, the court concludes that even if the County's notice dated June 11, 2007, violated the automatic stay, that does not invalidate the pre-petition tax sale. As a result, the money in the County's possession should be distributed in accordance with Indiana law for the distribution of funds following the redemption of property from a tax sale. Judgment will be entered accordingly.[7]

---

**6.** It was probably because of this, that the Indiana court had no need to discuss the possibility that acts in violation of the automatic stay might only be voidable, rather than void.

**7.** Although the matter has been submitted to the court based upon stipulations of fact and one issue the court has been asked to determine is how the available proceeds should be

distributed, the parties never entered into any stipulation as to what amount should be paid to whom based upon the various possible outcomes being sought. As a result, the court cannot be any more specific regarding the funds in possession of the county, other than to say that they should be distributed in accordance with Indiana's statutes following a proper redemption.